The People *v.* Krummer.

SUPERIOR COURT OF BUFFALO. December General Term, 1854. *Clinton, Verplank* and *Houghton,* Justices.

## THE PEOPLE *v.* BARNHARDT KRUMMER.

"I have bought of Barnhardt Krummer two frocks for $7. Ask your employers for the money, and let him have it." (Signed) "Mrs. Williams."

B. K. was indicted for forging this instrument, and for uttering it to Samuel Williams, Jr., (a son of Samuel Williams,) as the act of his mother: *Held,* that the instrument, in connection with the extrinsic facts, was within the statute of forgery, and that an acquittal on the indictment on the merits, was a bar to a subsequent indictment for obtaining the money from S. W., Jr., by the false pretence that the instrument was true.

To constitute forgery of an instrument or writing, it *is* not necessary that the party in whose name it purports to be made should have the legal capacity to make it, nor that the person to whom it is directed should be bound to act upon it if genuine, or have a remedy over. It is the felonious making and uttering of a *false* instrument as *true in fact,* which constitutes the crime.

The same rule of pleading applies to criminal and to civil cases, that the party committing the first fault shall have judgment rendered against him.

Therefore, in the case stated of the indictment for false pretences, where the People demurred to the defendant's plea of a former acquittal, and it appeared that the indictment averred the money obtained to be the money of Samuel Williams (the father), but did not aver a balance due the son for wages, or show otherwise *how* it was his money: *Held* bad, and that, irrespective of the question of the sufficiency of the plea, the defendant was entitled to judgment.

DEMURRER to plea of former acquittal. The prisoner had been indicted in this court, and charged, *first,* with having forged an instrument in writing not directed to any person, which instrument was in these words:

"I have bought of Barnhardt Krummer two frocks for $7. Ask your employers for the money, and let him have it.
"MRS. WILLIAMS."

And, *secondly*, with having uttered such forged instrument as true, with intent to defraud Samuel Williams. He was tried and acquitted. He was afterwards indicted for having by false pretences, of which the representation of this instrument as true was the main ingredient, obtained $7 of Samuel Williams, Jr. To this indictment he pleaded the former acquittal in bar, and the case came before the court on his joinder to the district attorney's demurrer to the plea.

*A. Sawin* (District Attorney), for the People.

—— ——, for the defendant.

*By the Court,* CLINTON, J. The law distinguishes, defines, and names different offences. One definition cannot comprise two distinct offences. The uttering of forged paper for value, and with a felonious intention to defraud, cannot be the felonious obtaining of money or property by a false token or pretence. It may well be that the prisoner was acquitted upon the ground of a variance between the indictment and proof, or upon an exception to the form or substance of the indictment; and, if so, he may be indicted anew for the same offence, for nothing but an acquittal upon the merits and the facts, can shield him from a second indictment for the same crime. (2 *R. S.,* 701, §§ 24, 25.) If the instrument is not within the statute of forgery, he never could have been legally liable for forgery in making or in uttering it, and whether acquitted or convicted upon such a charge, remains liable to the indictment before us If the instrument was within the statute, he cannot, under any circumstances, be held liable, under the statute against cheats, for a fraud perpetrated by the use of it.

The English statutes name the instruments, the forgery of which they denounce. The better opinion seems to be that our statute was intended to include all the instruments so named,

The People. *v.* Krummer.

and all writings which, upon their face, were likely, if false, to defraud, in its sweeping definition. It includes every "instrument in writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be, or purport to be, created, increased, discharged or diminished, or by which any rights, or property whatever, shall be, or purport to be, transferred, conveyed, discharged, diminished, or in any manner affected," "by which false making, forging, altering, or counterfeiting, any person may be affected, bound, or in any way injured in his person or property."

We are never called upon to determine whether, in legal construction, the false instrument, or writing, is an instrument of a particular name or character. It is a matter of perfect indifference whether it possesses or not the legal requisites of a bill of exchange, or an order for the payment of money, or the delivery of property. The question is whether, upon its face, it will have the effect to defraud those who may act upon it as genuine, or the person in whose name it is forged. It is not essential that the person in whose name it purports to be made should have the legal capacity to make it; nor that the person to whom it is directed should be bound to act upon it if genuine, or have a remedy over. No man is bound to receive a bank bill in payment, and yet forging a bank bill is felony. So is forging a bill purporting to be of a bank which has, in fact, no existence. Though all the parties to a bill of exchange are purely fictitious, if it be passed as genuine, it is regarded by the law as a forgery. The law looks only to the falsity of the instrument, and the fraudulent use of it as genuine. But if I err in this, I err only to this extent: that though where the parties to it are fictitious, there can perhaps be no forgery of the instrument, yet still the felonious uttering of it as true must be within the statute. A married woman's request to her husband for money by the bearer may surely be forged; and so may an infant son's request to his father or guardian, for a remittance, or a coat.

I have no doubt that, upon its face, the instrument is within the statute. Mrs. Williams, whose act it purports to be, must

be taken to be a natural person other than Barnhardt Krummer, the forger of it. It is not formally directed to any person, but, on its face, it is evidently intended to be presented to some person other than the drawer, or Krummer, the payee; it requests him to ask his employers for the money and let Krummer have it, and gives as the reason for the request, that she owes the money to Krummer for two frocks which she has not paid for. It is an order for the payment of money. Promissory notes, orders for the payment of money, bills of exchange and checks, have always been held to be within the statute, though they do not create, but merely evidence indebtedness. There a "pecuniary demand" was apparently "created," and whether it was justly, legally or effectually created, is a matter of indifference, so long as a third person could be affected, or in any way injured thereby in his person or property. It is evident that Mrs. Williams, and the person for presentation to whom the instrument was designed, might well be injured by the false making of it. Whether in fact it had been, or could be used to defraud either, must depend upon extrinsic circumstances not necessary to be pleaded.

The facts are that the Mrs. Williams intended by the signature, was, at the time of the forgery and of the uttering, the wife of one Samuel Williams, and the mother of one Samuel Williams, Jr., a minor, then at work for others for wages. The order was presented to the son, as the request of his mother, was capable of inducing him to honor it, and he did honor it. The fraud was perfected and injured the son or the father in his property. I cannot avoid the conclusion that the prisoner was liable to punishment, under our statute, for forging this paper, and for uttering it as true. He cannot, therefore, be liable to punishment for a distinct felony—that of obtaining money by uttering the paper and falsely pretending that it was true.

If my brothers should be of opinion that this paper is not within our statute of forgery, or deem it expedient to postpone passing upon the question directly raised by the demurrer, we may inquire into the sufficiency of the indictment

before us, for I have no doubt that the rule that judgment on demurrer must be given against the party who commits the first substantial error in pleading, is applicable to criminal as well as to civil actions. The indictment charges that Krummer made the false writing in question (which averment is surplusage). The writing requests Samuel Williams, Jr., (who is shown by the indictment to be the minor son of Samuel Williams,) "to ask his employers to let him have the money, and give it to him." The indictment then avers that Krummer presented the writing as true to the son, representing that his mother had signed it, and wished him "to obtain seven dollars from his employers and give it to him;" and that the son, believing the representations, "did procure from his employers the said sum of seven dollars" "of the proper moneys, &c., of the said Samuel Williams" (the father), and that so the said Krummer did, feloniously and by these false pretences, obtain the said money, being the money of the said Samuel Williams. But the indictment does not show how the moneys so obtained were the property of Samuel Williams (granting that he was entitled to the earnings of his son), because it does not aver any indebtedness of the employers for such earnings. If the paper was false, and the payment was made on the credit of it by the employers, it was made to their own loss. It is not averred that the son was working for wages, nor that anything was due from them, and an authority from the father, to either the son or the mother, to borrow money for him, or from the father to the mother to authorize the son so to borrow, is not to be implied from their relations to each other, nor is it averred; and if the money was borrowed without such authority, it is not shown how it could be the property of the father. The facts averred show that the money, falsely obtained. was the property of the employers, and not of Samuel Williams, and I think that the indictment is therefore bad, and that the prisoner is entitled to judgment.

Judgment for the defendant.