### HENRY BREWER v. THE STATE.

*No. 141.  Decided April 22.*

**1. Forgery of Name of Dead Person.**—On a trial for forgery, where it was contended that the person whose name was signed to the alleged forged check was dead at the time it was signed, and that consequently the making of said false instrument could not constitute forgery: *Held*, that it is forgery to sign the name of a dead person to an instrument with intent to defraud.

**2. Same.**—He who signs the name of a person who has or had no legal capacity to make the instrument, is guilty of forgery. And so also if he makes a false instrument and signs the name of a fictitious person thereto.

**3. Practice on Appeal as to Original Instrument sent up with Record.**—An instrument found in the transcript of the record will not be considered on appeal where it is not certified to by the clerk nor in any way identified as an original instrument used at the trial below.

**4. Evidence — Statements Made by Defendant.** — A defendant can not be heard to complain that his statements made to officers are introduced in evidence against him, where it appears that he was not under arrest at the time such statements were made.

APPEAL from the District Court of Lamar. Tried below before Hon. E. D. McCLELLAN.

Appellant was indicted for forgery of an instrument alleged to be the purported act of one C. F. Hathaway. The instrument alleged to have been forged was a check, drawn the 13th day of January, 1892, in favor of the defendant, or bearer, for $35, on the City National Bank.

At his trial defendant was convicted, and his punishment assessed at three years confinement in the penitentiary.

The testimony shows, that C. F. Hathaway, the purported drawer of

said check, was dead, and had been dead about two months at the time of the date of the check.

Sam Dickson testified: I am assistant cashier of the City National Bank, in Paris, Lamar County, Texas. I have known the defendant since about January 13, 1892. My attention was called to him when he presented a check on the City National Bank of Paris, at said bank, in the city of Paris, Lamar County, Texas, on January 13, 1892, for payment. The check was drawn for $35, and purported to have been signed by C. F. Hathaway, who at that time had been dead about two months. (Witness here identifies the check.) This is the check presented by defendant. I am acquainted with C. F. Hathaway's signature. This is not his signature on this check. I told defendant we could not pay it, and asked him all about where he got it, and he said he got it from a man at the Texas & Pacific depot, for a horse he, defendant, had sold. I asked him if he could find the man, and he said he could, and we went to the court house to see the officers (the county attorney), and at the sheriff's office we found two deputies, who went with him to look for the man and horse.

Testimony of G. D. Stephenson, a deputy sheriff of Lamar County: I am deputy sheriff of Lamar County. I know the defendant, Henry Brewer. (Points him out in court.) On the 13th day of January, 1892, Mr. Dickson and defendant came to the court house, wanting to find a man who, they said, had given defendant, at the Texas & Pacific depot, a check for $35 on the City National Bank, for a horse. Mr. Billy Mc-Knight, another deputy, and I went with defendant to the depot to look for the horse and man. He showed us where a horse had been, and told us he had come from Brookston that morning, and that he lived at Brookston, and that Frank lived in Paris, and saw the man give him the check for his horse. He also told us that he had been keeping his horse at a wagon yard on Clarksville Street. We never found the horse or man that defendant was looking for. Then we started to go with defendant from the Texas & Pacific depot to Frank Williams', and met Frank Williams on the street, and Frank told us, in presence of defendant, that he knew nothing of defendant having a horse, and that defendant had never kept any horse at his house. We afterwards went with defendant to the court house, and he was arrested there and the warrant read to him.

Cross-examined: We never warned nor cautioned the defendant. We had not arrested him, nor said anything to him about arresting him, nor charged him with anything till we got back to the court house. We went with him to find his horse and man. Yes, if he had attempted to run we would have tried to prevent his getting away. We were looking for his horse till we met Frank Williams, who told defendant he knew nothing of his (defendant's) owning a horse.

McKnight, another deputy sheriff, testified as did Stephenson.

The testimony of the officers as to the statements made to them by the defendant was objected to, because the defendant was under arrest at the time they were made.

*C. J. Davis* and *Walter E. Latimer*, for appellant.—A, dead man's name, under the laws of the State of Texas, can not be forged. C. F. Hatha-way died about two months prior to the date of the alleged forgery. Will-son's Crim. Stats., arts. 431, 433, 436, 437; 8 Am. and Eng. Encycl. of Law, 466 (note, forging name of deceased person); Anderson v. The State, 20 Texas Cr. App., 596; Rollins v. The State, 22 Texas Cr. App., 550; 2 Bish. Crim. Law, sec. 543.

The offense charged in the bill of indictment is defined in articles 431, 433, 436, 437 of the Penal Code. The indictment sets up C. F. Hatha-way, a natural person, whose name was forged; hence the person on whom the " pecuniary obligation" (if the same were true) must have been created was C. F. Hathaway, a living person. On the other hand, if C. F. Hathaway was dead at the time of the alleged forgery (which is a fact), then the only person on whom a " pecuniary obligation" could have been placed by forgery, if the same were true, was the decedent's (C. F. Hathaway's) estate.

In 8 American and English Encyclopedia of Law, 466 (note, forging name of deceased person), an authority uses the following language: " Persons are of two kinds, natural and artificial. A natural person is a human being. Artificial persons include (1) a collection or succession of natural persons forming a corporation; (2) a collection of property to which the law attributes the capacity of having rights and duties. The latter class of artificial persons is only recognized to a limited extent in our law; examples are the estates of a bankrupt or deceased person."

Article 436 of the Penal Code, defining " another," as used in article 431, Penal Code, uses the following language: " The instrument must purport to be the act of ' another,' and within the meaning of this word, as used in defining forgery, are included this State, the United States, or either of the States or Territories of the Union; all the several branches of government or either of them; all public and private bodies, politic and corporate; all courts; all officers, public or private, in their official capacity; all partnerships in professions or trades; and all other persons, whether real or fictitious, except the person engaged in the forgery."

We notice there is no reference made to the person represented by the deceased person's estate.

Again, in Anderson v. The State, 20 Texas Criminal Appeals, 596, the in-strument there referred to reads as follows: " George Woods: Martin Basinger says let Wiley Anderson have $10 worth of goods, and he will stand for it." The court uses the following language: " To constitute forgery, the instrument must be such an one that, if it were true, would

create, diminish, discharge, or defeat pecuniary obligation, or would transfer or in some manner affect property. The instrument must also purport to be the act of another, and the instrument must so allege and name the person whose act it purports to be. Now, if this instrument were true, would it create or increase any pecuniary obligation against Martin Basinger?"

Again, in Rollins v. The State, 22 Texas Criminal Appeals, 550, on the point that the instrument Henry Brewer is charged with having forged could not be made good by averment, the court uses the following language: "If the written instrument be void or invalid on its face, and can not be made good by averment, the crime of forgery can not be predicated upon it."

The court erred in admitting in evidence certain statements and confessions of defendant (appellant) whilst under arrest. Grosse v. The State, 11 Texas Cr. App., 373, 374; Nolen v. The State, 8 Texas Cr. App., 585.

*R. L. Henry,* Assistant Attorney-General, for the State.

DAVIDSON, Judge.— Omitting preceding portions, the indictment charges, that "Henry Brewer * * * did then and there unlawfully and without lawful authority, and with intent to defraud, did willfully and fraudulently make a false instrument in writing purporting to be the act of another, to-wit, the act of C. F. Hathaway, which said false and forged instrument is to the tenor following: 'Paris, Texas, January 13, 1892. Number 2. The City National Bank: Pay to Hury (meaning Henry) Brewer, or bearer, 35 dollars. C. F. Halhaway (meaning Hathaway.)'"

1. It is contended, inasmuch as Hathaway was dead at the time his name was signed to the check, that therefore the making of the false instrument can not constitute the crime of forgery. The authorities do not sustain this position. On the other hand, so far as we have been able to ascertain, the contrary doctrine has been held to be the correct one, and adhered to wherever the question has been adjudicated. Henderson v. The State, 14 Texas, 503; Billings v. The State, 107 Ind., 77; 2 Bish. Crim. Law, sec. 543, and notes.

It has also been held, that he who signs the name of a person who had or has no legal capacity to make the instrument, is guilty of forgery. People v. Krummer, 4 Park. Crim. R., 217. And so, where the accused makes the false instrument by signing the name of a fictitious person thereto, he is guilty of forgery. 1 Bish. Crim. Law, sec. 572, and note 6; 2 Bish. Crim. Law, sec. 543, and note 5.

2. The check offered in evidence was objected to because fatally variant from that alleged in the indictment. This objection seems to be based

upon bad handwriting, if we look to the original check. We are not authorized to do this, because it is not certified by the clerk, nor in any way identified as such original check (Carroll v. The State, 24 Texas Criminal Appeals, 313), but, if considered, we fail to see the supposed variance.

3. Defendant was not under arrest at the time he made the statements to the officers; therefore his objection on this ground was not well taken. The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.