## J. G. ROWAN v. THE STATE.

### No. 388. Decided January 12, 1910.

**1.—Rape—Evidence—Family Bible—Secondary Evidence.**

Upon trial for rape on a female under the age of consent, where the mother of said female testified as to the age of her daughter, and such age was the essential issue in the case, it was reversible error to permit said witness to say that she made an entry in the family Bible of the fact and date of her daughter's birth, and that she had torn out the leaf of the Bible and brought it with her to court, and to permit the State to introduce this leaf of said Bible containing said entry of said birth in evidence, over the objections of defendant, as this was secondary evidence, and inadmissible. Following Campbell v. Wilson, 23 Texas, 253, and other cases.

**2.—Same—Evidence—Opinion of Witness.**

On trial for rape, testimony of the prosecutrix' mother that she found some letters written by the defendant to prosecutrix as to improper intimacy between defendant and her daughter, which aroused her suspicion, was but an opinion of the witness, and inadmissible in evidence, the contents of the letters not having been disclosed.

**3.—Same—Evidence—Presents—Intimacy.**

Upon trial of rape of a female under age of consent, there was no error in admitting in evidence testimony to the effect that defendant had made prosecutrix presents, to show the intimate relationship that might exist between the defendant and the prosecutrix. Following Battles v. State, 53 Texas Crim. Rep., 202.

**4.—Same—Evidence—Credibility of Witness—Limiting Testimony.**

Where, upon trial for rape on a female under the age of consent, the State sought to impeach the credibility of one of defendant's witnesses with reference to the age of the prosecutrix, the court should have properly limited said testimony to purposes of impeachment.

**5.—Same—Charge of Court—Practice on Appeal.**

Where, upon appeal from a conviction of rape, appellant complained of the court's charge with reference to allusions to a former trial, and said objection was not made in the motion for new trial, but raised in appellant's brief, the same could not be considered.

**6.—Same—Evidence—Declarations by the Defendant.**

Upon trial for rape, there was no error to admit in evidence the declarations of defendant after he was out on bond, had been tried and convicted, and obtained a new trial, to the effect that he was really guilty, but was going to beat his case the next time.

**7.—Same—Variance—Name of Party Injured—Idem Sonans.**

Where, upon trial for rape, the indictment alleged the name of the prosecutrix to be Benani May Scurlock, while the proof showed that her name was Benoni May Scurlock, there was no variance, as the names were practically idem sonans.

Appeal from the District Court of Shelby. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of rape; penalty, seventeen years imprisonment in the penitentiary.

The opinion states the case.

*Brockman, Kahn & Williams* and *Fisher & Allison* and *D. M. Short & Sons,* for appellant.—On question of variance of name of party injured: Davis v. State, 37 Texas Crim. Rep., 218; Masterson v. Young, 48 S. W. Rep., 1109; Bell v. State, 25 Texas, 574; Weitzell v. State, 28 Texas Crim. App., 523; Munkers v. State, 87 Ala., 94; 21 Am. & Eng. Ency. of Law, 2d ed., page 313. As to question of admitting testimony of presents to the prosecutrix: Green v. State, 12 Texas Crim. App., 51; Fore v. State, 5 Texas Crim. App., 251; Rye v. State, 8 Texas Crim. App., 163. On question of admitting evidence as to age of prosecutrix of Bible entry: Cases cited in opinion. On court's failure to limit testimony: Paris v. State, 35 Texas Crim. Rep., 82; Owens v. State, 35 Texas Crim. Rep., 345; Bennett v. State, 43 Texas Crim. Rep., 241, 64 S. W. Rep., 254. On question of admitting opinion of witness: Jones v. State, 30 Texas Crim. App., 426; McCandless v. State, 21 Texas Crim. Rep., 411, 2 S. W. Rep., 811; Manning v. State, 37 Texas Crim. Rep., 180.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for rape

on a female under the age of consent with a penalty of seventeen years confinement in the penitentiary.

There seems to be no issue made on the question that appellant had had intercourse with the prosecutrix. The contention of appellant in the court below was that the prosecutrix was over the age of consent. It was attempted on the part of the State to show that the prosecutrix was born in July, 1893. The alleged rape was committed in April, 1907. The appellant's contention in the court below was that the prosecutrix was born in. the year 1890.

1. On the trial of the case in the court below the mother of the prosecutrix, Mrs. Jennie Scurlock, took the witness stand as a State's witness, and testified that the prosecutrix, Benoni May Scurlock, was born July 7, 1893, and that a short time thereafter she made an entry in the family Bible of that fact, and that she had torn out the leaf of the Bible and brought it with her to court. The State, over the objections of appellant, offered in evidence this leaf of the Bible containing the entry of the birth of Benoni May Scurlock. This was objected to on the part of appellant because the same was secondary evidence, and that the mother being present and testifying to the age, it was not admissible, and was immaterial, irrelevant, hearsay and secondary, and that it was particularly hurtful to the defendant's case in that it bore directly upon the only controverted issue in the case, to wit: the age of the alleged injured party; and because it had not been shown that the same constituted a record made at the time contemporaneous with the occurring of the events mentioned in said superscription. This action of the court was properly reserved by bill of exceptions, and is now before this court for revision, and the question here presented is this: Will a party be permitted to introduce the record of a past event when the party who made that entry in the record is present in court to testify as to the fact recited in said entry? This precise question has not been before our court in the manner in which it is here presented. A question similar to this, however, came before the Supreme Court of Texas in the case of William Campbell v. M. P. Wilson, reported in the 23 Texas, 253, in which Campbell sued Wilson on a promissory note for $100. Wilson set up the defense of infancy, alleging that he was under the age of twenty-one years, and on the trial the defendant, in support of his defense, offered in evidence the family record of births, deaths, etc., of the members of his father's family, contained in a Bible which was produced. The Bible was sufficiently identified as a part of the family record. He also testified that the defendant's mother was still alive, and in Austin County. Under these circumstances the court refused to permit the entries in the family Bible to be read to the jury; and the Supreme Court, speaking through Chief Justice Wheeler, held that this action of the court below was correct,

and that the court did not err in excluding said testimony upon the ground that there was better evidence accessible, his mother being alive, and within reach of the process of the court. Further on he says: "It has been considered that these entries stand on the ground of family acknowledgments, and that they are admissible, on account of their publicity, without proof that the entries were made by a member of the family. But when better evidence is shown to be accessible, they are excluded, by the rule that excludes the secondary, when primary evidence can be obtained. When admitted, it is, in general, as the declaration of the persons by whom they were made. But they can not be received where the father, mother or other declarant is present in court, or within reach of process." The doctrine here announced was again reaffirmed in the case of Smith v. Geer, 10 Texas Civ. App., 252, and in this last named case the court held that an entry in a Bible is inadmissible if parents have testified as to the age of the child. A case, however, in point, and similar to the case now before us is the case of The People v. Mayne, 118 Cal., 516. Mayne in that case was indicted for rape upon a female child under the age of consent. There the mother was in court, as in this case, and testified to the age of the child. The State offered in addition thereto an entry made in the Bible by the mother giving the date of the girl's birth, and the court in that case held that the testimony was not admissible, citing a number of authorities, and, as we think, the reasoning of the court in that case is conclusive of the question here involved. We, therefore, quote with approval the following extract from said opinion: "An entry in a family Bible is a written declaration of a fact made out of court, not under the sanction of an oath, or with any opportunity to test its correctness by means of cross-examination. It is but a declaration by the person who made the entry, and is of the same character as any other declaration, whether written or oral. Being made in a book where entries of this nature are often made, it is entitled to greater weight by reason of its formality than would be a similar verbal declaration, but the principles upon which it is received in evidence are the same as govern verbal declaration of the same fact. It is hearsay evidence, and subject to the general rule by which that class of evidence is governed, that the fact sought to be established can not be otherwise shown. This rule was formulated by Chief Justice Marshall in Mima Queen v. Hepburn, 2 Cranch, 3, in the following terms: 'Hearsay evidence is incompetent to establish any specific fact, which fact is in its nature susceptible of being proved by witnesses who speak from their own knowledge.' Such evidence is admitted in matters of pedigree, but, as Mr. Greenleaf says (Greenleaf on Evidence, sec. 103): 'The rule of admission is restricted to the declarations of deceased persons who were related by blood or marriage to the person.' Taylor, in

his treatise on Evidence, ninth edition, section 641, says: 'Where, however, the declarant is himself alive and capable of being examined his declarations will be rejected;' and in the American notes to this edition, it is said: 'A familiar form of record is the family Bible. Declarations in such form of facts of pedigree, made by deceased members of the family, are competent evidence of the facts therein stated.' See also Dupoyster v. Gagani, 84 Ky., 403; McCausland v. Fleming, 63 Pa. St., 36; Leggett v. Boyd, 3 Wend., 376; Greenleaf v. Dubuque, etc., R. R. Co., 30 Iowa, 301; Campbell v. Wilson, 23 Texas, 253; 76 Am. Dec., 67; Robinson v. Blakely, 4 Rich., 586; 55 Am. Dec., 703; 1 Phillips on Evidence, secs. 248, 250.

"Although the term 'pedigree' includes the facts of birth, marriage and death, and the times when these events happened (Greenleaf on Evidence, sec. 104), and evidence of these facts is pertinent for the purpose of establishing pedigree, the several facts, or either of them, do not themselves constitute pedigree, and a case in which the age of an individual is the issue to be determined is not a case of pedigree. 'A case is not necessarily a case of pedigree because it may involve questions of birth, parentage, age, or relationship. Where these questions are merely incidental and the judgment will simply establish a debt or a person's liability on a contract, or his proper settlement as a pauper, and things of that nature, the case is not of pedigree, although questions of marriage, legitimacy, death, or birth are incidentally inquired of.' Eisenlord v. Clum, 126 N. Y., 552. See also Haines v. Guthrie, L. R. 13, Q. B. Div., 818. In Leggett v. Boyd, supra, the defense of infancy was made to an action upon a promissory note, and in support of this defense the family Bible of the parents was offered in which the entry of his birth had been made by his mother; and its exclusion was upheld upon the ground that the person by whom it was made was in court and could have been examined. Campbell v. Wilson, supra, was of the same character, and the evidence was excluded because it was shown that the mother was within reach of the process of the court. Greenleaf v. Dubuque, etc., R. R. Co., supra, was an action to recover damages for negligence in causing the death of a person, and for the purpose of establishing his age as an element in determining the amount of damages, the plaintiff was allowed to show the date of his birth from an entry in the family Bible. This was held to be error, on the ground that it was not shown that the person who made the entry was dead. In Robinson v. Blakely, 4 Rich., 586, 55 Am. Dec., 703, the family register of births and deaths was held inadmissible to show the age of the plaintiff for the purpose of determining whether the action was barred by the statute of limitations, upon the ground that the father who made the entry was still alive, the court saying: 'These entries stand on no higher footing than other declarations, and are entitled to no higher con-

sideration, except that if made at the time the fact occurred they are more reliable.' The admissibility in evidence of these facts is limited by Mr. Greenleaf in the section above referred to, to cases where they arise incidentally and in relation to pedigree as follows: 'Thus an entry by a deceased parent, or other relative, made in a Bible, family missal, or any other book, or in any document or paper, stating the fact or date of the birth, marriage, or death of a child or other relative, is regarded as the declaration of such parent or relative in a matter of pedigree.' Taylor says (Taylor on Evidence, 650): 'Entries made by a parent or relation in Bibles, prayer-books, missals, almanacs, or, indeed, in any other book, or in any document or paper, stating the fact and date of the birth, marriage or death of a child or other relation, are also evidence in pedigree cases as being written declarations of the deceased persons who respectively made them.'

"The entry in the Bible in the present case was shown to have been made by Mrs. Shipton, and as she was present in court and had testified to the date of the child's birth, it was not competent for the prosecution to introduce as a piece of substantive evidence in support of this issue her written declaration made several years previously. Nor can it be said that the error was harmless. The evidence was not cumulative, but was of an entirely different character from any other evidence in reference to the child's age, and the jury may well have given it a credit by reason of its formality and apparent authenticity which they would not grant to the living witness who testified respecting the age."

Believing, therefore, that the action of the court below in admitting this leaf of the family Bible was error, and that said error was hurtful to the appellant, and that the jury were probably influenced by this testimony, as strengthening the testimony of the mother as to the age of the child, in a case where the issue of age was sharply drawn as in this case, and was of such a harmful character as to require a reversal of the case. However, there are several other questions in the record that we deem it proper should be noticed.

2. On the trial of the case when Mrs. Jennie Scurlock, the mother of the prosecutrix, was upon the witness stand testifying, the State asked this witness whether she saw anything during the time the appellant boarded at her house that would arouse suspicion in her mind of the existence of an intimacy between defendant and her daughter, Benoni May Scurlock, and if so state what it was. This question was objected to by appellant, which objection was overruled, and the witness answered, over the objection of appellant, to the effect that she did not see anything while he was boarding there that showed intimacy, but that after appellant left her house she found something that did arouse her suspicions; that she saw some

letters addressed to Benoni May Scurlock in defendant's handwriting; that she found some of them in Benoni May Scurlock's trunk, and one in a tomato can in the garden. This testimony was objected to on the ground that it was irrelevant and immaterial in that the question called for the conclusion of the witness, and the testimony itself was too indefinite in its nature to throw any light upon any issue in the case, and the contents of the letters not being disclosed, the inference that they showed an intimacy between defendant and Benoni May Scurlock arose out of the nature of the question, and was calculated to impress the jury that the contents of the letters were of a nature that demonstrated an improper intimacy to have existed between defendant and the prosecutrix. This action of the court was reserved by bill of exceptions, and in permitting this testimony we think the court below erred. The letters were not before the jury; what the contents of the letters were no one knew, and it is elementary that a witness will not be permitted to give the conclusion reached in his mind as to what a writing contained, or the meaning of a writing, but if the letters were properly proved up, they might be admissible in a proper case, and it would be the province of the jury to draw the inference from the letters or conclusion from the letters, but is not the province of the witness so to do. We, therefore, hold that the court erred in allowing Mrs. Scurlock to testify as to the inference or conclusion that she came to from reading the letters. An inspection of the record in this case shows that appellant was boarding at the home of Mr. and Mrs. Scurlock, the father and mother of the prosecutrix, and the prosecutrix testified that in April, 1907, she and appellant took a stroll in the woods from the little village of Bronson, and went about a mile and a half from home, they taking a target rifle along with them, and were shooting at birds and gathering violets, and while on this trip appellant had intercourse with her. This was all the testimony that was offered in the case, and in view of the case as made by the State, we think that this testimony of the conclusion drawn by the mother of prosecutrix was hurtful and prejudicial.

3. Appellant also excepted to the action of the court in permitting the State to prove by the prosecutrix, Benoni May Scurlock, while on the witness stand, that appellant had made her a present of some candies and a ring. The bill of exception fails to disclose whether these presents were made before or after the act of intercourse. However, the question that was asked was whether the defendant while boarding at her father's house, and prior to the time of the intercourse, had made her any presents or not. The witness answered that he had, but did not say whether before or after the act of intercourse. However, we are inclined to hold that this testimony was admissible. We think it is always admissible in a case of rape of a female under the age of consent to show any

intimate relationship that might exist between the appellant and the prosecutrix, especially in a case of this sort where the testimony shows that the intercourse was had with the full consent of the prosecutrix, as a circumstance to show the willingness on the part of the prosecutrix to enter into the act of intercourse. While it is true, want of consent is wholly immaterial in a case of this sort, however, it might be that a story would sound unreasonable that a girl would willingly enter into this act of intercourse with a party in the absence of any circumstance showing familiarity, or allurements preceding the act. We think this testimony was admissible as a circumstance to throw light upon the act of intercourse. Battles v. State, 53 Texas Crim. Rep., 202.

4. On the trial of the case the appellant offered the witness Bertie Gray, who testified that she was a cousin of the prosecutrix, Benoni May Scurlock, and that they had lived close to each other, and had been boon companions all their lives, and that she, Bertie Gray, was born December 5, 1888, and that Benoni May Scurlock, her cousin, was born July 7, 1890. She further testified that they were both about the same age, wore one another's clothes, and that she had always been told previous to this as a part of the family history that she (the witness) was a year and seven months older than prosecutrix, Benoni May Scurlock. They both weighed about the same, and were about the same height. Now, then, the State placed upon the stand the witness R. S. Noble, in rebuttal, who testified that on a former trial of the case the witness Bertie Gray testified that she was born in December, 1889, and that she was a year, seven months and two days older than the prosecutrix, Benoni May Scurlock. Now, the appellant in his motion for a new trial complains that the court erred in not charging the jury for what purpose the testimony of the witness Noble was introduced, that is, that said testimony could not be used towards establishing the age of the prosecutrix, Benoni May Scurlock, but that same could only be considered by the jury as affecting the credibility of Miss Bertie Gray. It has been repeatedly held by this court that where impeaching testimony is introduced, if the same could be used for the purpose of establishing any fact in the case other than as affecting the credibility of the witness, that it is the duty of the court to limit such testimony. We, therefore, hold that upon another trial of this case if the testimony should be offered by the State to impeach the witness Miss Bertie Gray as to her statement of her age, and as contradictory thereof, that the court in its charge to the jury should limit the effect of such testimony and to substantially direct the jury that the same could only be considered as affecting the credibility of the witness, and for no other purpose.

5. In the brief of counsel for appellant, complaint is made to the following paragraph of the court's charge: "It having been

developed in this trial, without objection, that there had been one
or more former trials of this case and that defendant had once been
convicted and obtained a new trial, it becomes proper and I now
instruct you that none of these former proceedings should in any
degree influence your action in determining the issue of guilt on
this trial, nor should the same be referred to or discussed by you
with any such view or purpose or with the view or purpose of in-
fluencing the action or opinion of any other juryman." There is
no complaint of this charge in the motion for new trial, and, there-
fore, the same is not before this court in such shape as it can be
considered.

6. Appellant's bill of exceptions No. 4 complains that the court
below erred in permitting the witness Byerly to testify that the
appellant Rowan came to him some time between the month of
September and Christmas of the year 1907, and told him that he
had had a trial, and had been convicted, and got a new trial. Wit-
ness told him he was glad of it, and then said to appellant: "Rowan,
that was a kind of a hatched up matter anyhow against you, was
it not?" Appellant replied, "Well, no, I was really guilty; but I
am out on bond now, have got a new trial and I will damn sure
beat it next time." This testimony was objected to on the trial
of the case upon the following grounds: That same was in the
nature of a legal conclusion, and was not the statement of a fact,
and that said statement of the defendant as testified to by the wit-
ness was not the admission or confession on his part that he had
done any act constituting a violation of law, and because said
purported statement of the defendant to the effect that he was
really guilty was calculated to be taken by the jury as a plea of
guilty to the charge preferred, and to have embraced within its
meaning all the elements of the offense with which he stands
charged, and because said testimony, in view of the fact that the
only issue made on the trial was as to the age of the injured party
in the spring of 1907, and as to whether she was under 15 years
old at that time, was specially hurtful on this particular issue,
to wit: the age of the girl. Now, the first part of the witness'
testimony, that the appellant told him that he had been convicted,
and obtained a new trial, while inadmissible, is not objected to,
but the bill of exceptions is to that portion of the witness' testi-
mony that appellant told him he was really guilty, the counsel con-
tending that this was but a conclusion of the witness, and that the
same may have been meant by the appellant to mean that he had
intercourse with the girl, but was not an admission that the girl
was under 15 years of age, and that the testimony was hurtful
because of that fact, and if the court admitted it, it should have
gone further and have given a meaning to the language used.
Counsel for appellant have cited us to no authority sustaining their

position, and we are constrained to hold that the testimony that he was guilty was admissible, and as to its meaning it must have been left to the jury to be construed in the light of the surrounding circumstances.

7. The ninth ground of the motion for a new trial complains that there is a variance between the bill of indictment and the proof that the bill of indictment alleges the name of the prosecutrix to be Benani May Scurlock, while the proof showed that the name of the prosecutrix was Benoni May Scurlock. When the prosecutrix took the stand she testified that her name was Benoni Bird May Scurlock, but that the name she usually went by was ·Benoni May Scurlock, and there is no testimony in the case that she was ever called Benani May Scurlock, and that this was such a variance as entitled appellant to an acquittal. The record discloses that after the witness Benoni May Scurlock had testified, appellant moved the court to instruct a verdict because of the variance, and the question before this court is, was there such a variance as would defeat this prosecution under the indictment. If we should hold that there is a variance in this case, it must be upon the grounds that the two names are not idem sonans. Mr. Abbott, in his Trial Brief, section 680, lays down the following rule: "A variance is not now regarded as material unless it is such as might mislead the defense, or might expose the accused to the danger of being put twice in jeopardy for the same offense." And Mr. Rice, in his valuable work on Evidence, lays down the following rule: "There is a rule of growing importance by which courts, for many years, have evinced, by their decisions, a disposition to recede from the fading adherence to common law technicalities, and hold rather to substance than mere form. Modern decisions conform to the rule that a variance, to be material, must be such as to mislead the opposite party to his prejudice, and hence the doctrine of idem sonans has been much enlarged by modern decisions, to conform to the above salutary rule. The law does not treat every slight variance, if trivial, such as the omission of a letter in the name, as fatal. The variance should be a substantial and material one to be fatal." See section 123, vol. 3. It may be said to be wholly immaterial as to how the word is spelled. If practically they have the same sound they will be regarded as idem sonans, and if the words have the same sound then there is no fatal variance, although the two names may have been spelled slightly different. See Parchman v. State, 2 Texas Crim. App., 228. And if the words can be sounded alike, without disturbing the power of the letters that is found in the variant orthography, the variance will be immaterial. See Adams v. State, 67 Ala., 89. Also see the cases of Henry v. State, 7 Texas Crim. App., 388, and Spoonemore v. State, 25 Texas Crim. App., 358. Identity of sound may be regarded as a surer method of designating the names of persons

than that of depending upon mere identity in the orthography. The rule seems to be that the doctrine of idem sonans should not be too rigidly enforced, and the principal question in all cases should be as to the materiality of the variance, which becomes a fact to be determined by a jury. In an early case the Supreme Court of Illinois has held where material variance was claimed in the names of a conveyance that Michael Allen, named in the deed as grantor was, presumptively, Michael Allaine, grantee of the same property, as, also, that Otoine Allaine was, presumptively, Antoine Allaine. See Chiniquy v. Catholic Bishop of Chicago, 41 Ill., 148, and see cases cited in Rapalje's Criminal Procedure, section 83, in which a great number of cases are tabulated. It may be said that the decisions of the different courts are not uniform upon this subject, and that we can find authorities both ways upon the subject, one line of authorities holding that if a vowel is substituted that gives to the instrument a different sound, then it is a variance, and others holding that the mere fact of the change of the vowel giving it a different sound would not be a variance. However, "o" sometimes is given the sound of "a" and "a" sometimes the sound of "o." We, therefore, hold in this case that Benoni and Benani are practically idem sonans, and that the variance is not of sufficient materiality as could mislead the defense, and a conviction for rape upon a girl by the name of Benoni where the indictment charged Benani would be a complete protection, and in view of her testimony there could be no danger of appellant being put in jeopardy for the same offense. We, therefore, overrule appellant's contention that there is a variance, but for the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*