## WILLIAM H. FEENY v. THE STATE.

### No. 928.    Decided February 8, 1911.

### Rehearing Denied June 14, 1911.

**1.—Forgery—Certificate—Practice on Appeal.**
    Original papers sent up to the Court of Criminal Appeals must be verified by the certificate of the clerk in the trial court.

**2.—Same—Fictitious Person—Evidence.**
    Where the indictment alleged that the alleged maker of the check was a fictitious person, there was no error in admitting proof of this allegation, especially where the endorsement on the check purported to show contractual relations between defendant and said fictitious maker.

**3.—Same—Charge of Court—Deposit—Collection.**
    Where, upon trial of forgery, the evidence showed that the defendant left the alleged check with a bank and drew against it, the amount having been passed to his credit, this showed that the check was left for deposit and not for collection, and there was no error in the court's failure to submit the question of collection to the jury. But even if left in the bank for collection he must have known the fraud.

**4.—Same—Variance—Charge of Court.**
    Where, upon appeal from a conviction of forgery, the appellant claimed a variance between the allegations in the indictment and the instrument introduced in evidence, and the original written instrument was sent up with the record and simply showed bad handwriting and no material variance, there was no error in the court's failure to submit a requested charge on the question of variance.

**5.—Same—Variance—Non Est Factum.**
    Where, upon appeal from a conviction of forgery, the appellant claimed a variance between the allegation in the indictment and the written instrument in evidence as to the name of the maker, and it further appeared from the record that the appellant had pleaded non est factum, spelling the name of the alleged maker of the instrument as set out in the indictment, he could not be heard to claim a variance.

**6.—Same—Variance—Rule Stated.**
    Where the allegation is sufficiently certain that the accused may know the instrument which he is charged to have forged or passed, and is sufficiently identified to enable the defendant to plead former acquittal or conviction, no substantial variance can be claimed,

**7.—Same—Statement of Facts.**

Where it is shown on appeal that the statement of facts was filed within time, an order of the Appellate Court declining to consider the same will be set aside and the case heard on its merits.

Appeal from the District Court of Potter. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of forgery; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Reeder & Graham,* for appellant.—On question of filing statement of facts: Haak v. State, 60 Texas Crim. Rep., 366, 132 S. W. Rep., 358.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of forgery, his punishment being assessed at three years confinement in the penitentiary.

Motion is made by the assistant attorney-general to strike out the statement of facts because not filed within the time allowed by the court under orders entered. The court adjourned on the 2d of April, 1910. The court held over eight weeks. The order allowing time after adjournment of the court to file statement of facts and bills of exception was entered on the 26th day of March, allowing sixty days' time in which appellant could prepare and file his bills of exception and statement of facts. Subsequently another order was granted extending the time to eighty days in which to file bills of exception and statement of facts. Under this order appellant had eighty days from the 26th day of March in which to file statement of facts and bills of exception. The bills of exception and statement of facts were not filed until the 18th of June, which was about eighty-three days, instead of eighty allowed by the court. There is no reason shown in the record why the statement of facts was not filed within the time authorized. The order of the court included as well the bills of exception as it did the statement of facts. Under this showing of the record we are of opinion the motion of the assistant attorney-general is well taken, and same will be sustained.

As the record presents the case to us, with the exceptions and evidence eliminated, there are no questions that can be reviewed or revised. The charges given by the court are applicable to a state of case provable under the indictment. With the evidence eliminated, we are unable to say that the court erred in refusing the special requested instructions.

We find among the papers what purports to be the original instrument upon which the indictment was predicated. The record shows that there was an order entered sending up the original papers, but

those found in the record are not in any way verified by certificate of the clerk as being the original papers as used on the trial, nor is that instrument, supposedly the basis of the indictment, certified as such. In fact there is no certificate of the clerk verifying or certifying that these are the original papers. It has been the practice since State v. Morris, 43 Texas, 372, that all original papers sent up must be so sent independent of and not a part of the transcript, and verified by the certificate of the clerk as such original papers; otherwise they can not be considered. The same rule laid down by the Supreme Court in Morris v. State, supra, has been followed by this court in its decisions. Carroll v. State, 24 Texas Crim. App., 313; Brewer v. State, 32 Texas Crim. Rep., 74; Kennedy v. State, 33 Texas Crim. Rep., 183.

Under the condition of the record there. are no questions which authorize a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

ON REHEARING.

June 14, 1911.

PRENDERGAST, JUDGE.—This case was reversed on a former appeal which is found in 58 Texas Crim. Rep., 152.

1. During the trial evidence was introduced by the State to support the allegation in the count in the indictment relied on for conviction, to wit: That R. C. Cameron & Son were fictitious persons. Quite a lot of evidence was introduced showing that no such firm as R. C. Cameron & Son lived, or ever lived, or was known in Waco, or McLennan County. The check alleged to have been forged and passed by appellant purports to have been signed, as alleged in the indictment, by R. C. Cameron & Son, in favor of William H. Feeny, and drawn on the Provident National Bank of Waco. It is contended that this evidence was not admissible. No authority is cited in support of this contention. We are of opinion that this evidence was admissible, and this idea is strengthened by an endorsement on the back of the check in the following language: "In payment in full for services rendered. R. C. C." The check having been drawn in favor of appellant by R. C. Cameron & Son, in payment in full for services rendered, would indicate that at one time contractual relations existed between appellant and R. C. Cameron & Son. If R. C. Cameron & Son were an existing company or firm, appellant would have known that fact, inasmuch as he had performed services for them. Inasmuch as it was a fictitious firm or fictitious persons, this would tend to fasten knowledge upon appellant of fraud sought to be perpetrated by means of the check. Having alleged the fact that R. C. Cameron & Son were fictitious persons, it was necessary that evidence of that fact be before the jury. We are, therefore, of opinion that there was no error in this ruling.

2. Appellant insists that the court erred in not instructing the jury and in refusing special instructions submitting the question that if

the check was deposited with the First National Bank of Amarillo—where it was in fact deposited—for collection, and not for deposit, that appellant would be entitled to an acquittal. We are of opinion, under the facts, that appellant did not deposit the check for collection, but if we are in error in that and the other question is presented—that is, that it was left with the bank for collection—then we are still of opinion that there was no error in refusing to so instruct the jury. As before stated, if R. C. Cameron & Son were fictitious persons, appellant knew that fact, or if they had an actual existence he knew the fact, because the endorsement on the check was in payment in full for services, indicating, as before stated, that there had been a contractual relation between the parties for which R. C. Cameron & Son owed him, at least the amount stated on the face of the check, which was $475. If appellant deposited it only for the purpose of collection, then he knew it would not be collected, and, having drawn money on it, and received a duplicate deposit slip, or check, at the time he did deposit it, and shortly afterwards drew out something over $400 in three checks, one for $330 and one for $75, and one for $25, it would show that he was intending to defraud somebody. Having collected the money from the Amarillo bank, on this check, as stated, we are of opinion that it fixes the fact that it was deposited for $475 to be placed to his credit and not for the purpose of collection, and having drawn money, he knew the check would not be paid when it was sent to the Provident National Bank, at Waco, because he knew R. C. Cameron & Son had no existence for the reasons above stated. That he intended to defraud somebody is made patent by all the circumstances, and he did not, and could not, have intended to defraud R. C. Cameron & Son, because they were fictitious persons. Therefore, he intended to defraud the Amarillo bank, under the facts of this case, and, as a matter of fact, did defraud them. Appellant was seeking to use the Amarillo bank, innocent parties, for the purpose of defrauding and getting the benefit of the fraud, knowing that it must fall upon them, as it could not fall upon R. C. Cameron & Son.

3. It is contended that there is a fatal variance between the allegations in the indictment, to wit: that the instrument was signed by R. C. Cameron & Son, whereas, in fact, the instrument was signed by R. C. Camaon & Son, or R. C. Camnon & Son. This became an issue in the case, and the original instrument is sent up with the transcript for our inspection. On the prior decision of this case, during this term, we declined to consider this original instrument sent up, because not sufficiently authenticated. On this motion for rehearing, we find that it has been since then sufficiently authenticated to require our consideration. We have examined it with a great deal of interest and care, and have done so time and again. It evidently was intended to be R. C. Cameron & Son. The name R. C. Cameron & Son, in the original instrument, appears to us to be that instead of Camaon or Camnon, as contended by appellant. In fact, the signature as it is, would, with-

out hesitation, ordinarily be taken for Cameron, unless and until special attention is called thereto, and the attempt made to decipher each letter separately; even considering the writing of the name with the attempt to figure out each letter separately and definitely, it would more nearly resemble and actually be Cameron than any other name. It only emphasizes to us bad handwriting, as the writing of 99 out of every 100 signatures of proper names to letters and documents of any character generally are. A fair illustration of this is shown by the opinion of Judge Davidson, for this court, in the case of Martinez v. State, 51 Texas Crim. Rep. 584, wherein he says:

"Appellant moved the court to instruct the jury to return a verdict of not guilty on account of the alleged variance between the allegation in the indictment and the evidence adduced, in that the indictment charges the house to be the property of J. J. Wowen, and the entry was made without the consent of said J. J. Wowen, whereas the evidence showed that the house was under the control of J. J. Warren. In support of this, the original indictment is sent up to this court for its inspection. We do not believe there is any merit in this contention. While the two r's in the name Warren somewhat resembles a 'w,' it in nowise resembles the letter 'w' elsewhere in the indictment, as written by the pleader, and it is evident, from an inspection of the allegation in the indictment, that there was no misapprehension as to the name Warren. This was but bad handwriting." The principle announced in this opinion is particularly applicable here, and we think the case is directly in point. Again, this court, in the case of Emmons v. State, 43 S. W. Rep., 518, says: "Appellant objected to the introduction in evidence of the order which is alleged to have been forged, on the ground of variance between it and the alleged copy thereof set out in the indictment; and he sends the indictment and original order with the transcript in this case for our inspection. He claims that the order, as copied in the indictment, in the address, contains the letter 'i' in 'Chilton,' whereas the order contains the letter 'e.' His contention in this regard appears to be correct; but this, in our opinion, is not at all a material variance. This, in fact, constitutes no part of the order, but merely the address. The writer does not appear in the order to have dotted what may be intended for an 'i.' There does not appear to be the slightest variance between the word 'levy,' as written in the order, and 'Levy,' as written in the indictment, except that in the indictment the latter 'Levy' appears to be written with a capital 'L,' whereas, in the order, it is a small 'l.'

"The word written in the order 'Weeks,' in whose favor it was drawn, may be read 'Neeks,' 'Weeks,' or 'Meeks,' as the first letter in the name is peculiarly shaped. It is sufficient to say that the indictment follows, as near as practicable, the formation of the beginning letter of said word as written in the order; and it may be called 'Neeks,' 'Weeks' and 'Meeks,' just as one chooses to read it. In our opinion, there is no variance between the indictment and the order

introduced in evidence." See also Lassiter v. State, 35 Texas Crim. Rep., 540; Ham v. State, 4 Texas Crim. App., 645; Young v. State, 40 S. W. Rep., 793; Anderson v. State, 19 Texas Crim. App., 299.

Again, in the case of Rowan v. State, 57 Texas Crim. Rep., 625, 124 S. W. Rep., 668, which was a case of rape, in which it sought to show that there was a fatal variance between the name of the injured party charged in the indictment, and that proven on the trial. What the court said in that case, we think, is applicable and illustrative of the correct rule where there is claimed to be a fatal variance between the allegations and the proof. The court, in that opinion, said:

"The ninth ground of the motion for a new trial claims that there is a variance between the bill of indictment and the proof; that the bill of indictment alleges the name of the prosecutrix to be Benani May Scurlock, while the proof showed that the name of the prosecutrix was Benoni May Scurlock. When the prosecutrix took the stand she testified that her name was Benoni Bird May Scurlock, but that the name she usually went by was Benoni May Scurlock, and there is no testimony in the case that she was ever called Benani May Scurlock, and that this was such a variance as entitled appellant to an acquittal. The record discloses that after the witness, Benoni May Scurlock, had testified, appellant moved the court to instruct a verdict because of the variance, and the question before this court is, was there such a variance as would defeat this prosecution under the indictment? If we should hold that there is a variance in this case, it must be upon the grounds that the two names are not idem sonans. Mr. Abbott, in his Trial Brief, sec. 680, lays down the following rule: 'A variance is not now regarded as material unless it is such as might mislead the defense, or might expose the accused to the danger of being put twice in jeopardy for the same offense.' And Mr. Rice, in his valuable work on Evidence, lays down the following rule: 'There is a rule of growing importance by which courts, for many years, have evinced, by their decisions, a disposition to recede from the fading adherence to common-law technicalities, and hold rather to substance than mere form. Modern decisions conform to the rule that a variance, to be material, must be such as to mislead the opposite party to his prejudice, and hence the doctrine of idem sonans has been much enlarged by modern decisions to conform to the above salutary rule. The law does not treat every slight variance, if trivial, such as the omission of a letter in the name, as fatal. The variance should be a substantial and material one to be fatal.' See section 123, vol. 3. It may be said to be wholly immaterial as to how the word is spelled. If practically they have the same sound they will be regarded as idem sonans, and if the words have the same sound then there is no fatal variance, although the two names may have been spelled slightly different. See Parchman v. State, 2 Texas Crim. App., 228, 27 Am. Rep., 435. And if the words can be sounded alike, without disturbing the power of the letters that is found in the variant orthography, the

variance will be immaterial.  See Adams v. State, 67 Ala., 89.  Also
see the cases of Henry v. State, 7 Texas Crim. App., 388, and Spoone-
more v. State, 25 Texas Crim. App., 358, 8 S. W., 280.  Identity of
sound may be regarded as a surer method of designating the names
of persons than that of depending upon mere identity in the orthog-
raphy.  The rule seems to be that the doctrine of idem sonans should
not be too rigidly enforced, and the principal question in all cases
should be as to the materiality of the variance, which becomes a fact
to be determined by a jury.  In an early case the Supreme Court of
Illinois has held, where material variance was claimed in the names
of a conveyance, that Michael Allen, named in the deed as grantor,
was, presumptively, Michael Allaine, grantee of the same property, as,
also, that Otoine Allaine was, presumptively, Antoine Allaine.  See
Chiniquy v. Catholic Bishop of Chicago, 41 Ill., 148; and see cases
cited in Rapalje's Criminal Procedure, sec. 83, in which a great num-
ber of cases are tabulated.  It may be said that the decisions of the
different courts are not uniform upon this subject, and that we can
find authorities both ways upon the subject, one line of authorities
holding that if a vowel is substituted that gives to the instrument a
different sound, then it is a variance, and others holding that the
mere fact of the change of a vowel, giving it a different sound, would
not be a variance.  However, 'o' sometimes is given the sound of 'a,'
and 'a' sometimes the sound of 'o.'  We therefore hold in this case
that 'Benoni' and 'Benani' are practically idem sonans, and that the
variance is not of sufficient materiality as could mislead the defense, and
a conviction for rape upon a girl by the name of 'Benoni,' where the
indictment charged 'Benani,' would be a complete protection, and in
view of her testimony there could be no danger of appellant being
put in jeopardy for the same offense."  See also Gentry v. State, re-
cently decided but not yet reported.

The whole of the testimony in this case tends to show, and does
show without doubt, that this identical instrument and no other is the
instrument which appellant is conclusively shown to have attempted
to pass as true, and did pass as true, as charged in the indictment and
found by the jury.  In addition to this, appellant introduced in evi-
dence his affidavit of non est factum, which was made and filed in the
cause on May 29, 1909, in which he identified said instrument, copying
it word for word and letter for letter, spelling the name "Cameron,"
and says that he did not execute said instrument or any part of the
instrument declared upon, nor authorize the execution of said instru-
ment or any part thereof, "except the endorsement 'Wm. H. Feeny,'
which appears on the back thereof, which is the right name of this de-
fendant."

There are but two objects, under our law, to be attained in cases
where there is a slight-claimed variance between the allegations and
evidence in cases of this character:  The first is, that the accused
shall know that the instrument which he is charged with attempting

to pass, and actually did pass, is the instrument which is alleged in the indictment, so that he may not be misled by the evidence thereof when introduced on the trial. The second is, that it shall be so identified as that he can successfully plead former acquittal, or conviction, as the case may be, in the event of any subsequent prosecution·for the same offense. In this case both of these requisites are clearly established without the shadow of a doubt.

The special charge requested by appellant, which was refused, and which is made a ground for reversal in this case, is as follows:

"You are instructed that if you believe from the evidence introduced that the check for $475 has signed thereto the name 'R. C. Camaon & Son,' instead of the name 'R. C. Cameron & Son,' as charged in the indictment; or if you believe from the evidence that the name signed to said check for $475 is any other name than that of 'R. C. Cameron & Son,' as charged in the indictment; or if you have a reasonable doubt from the evidence as to whether the check for $475 has signed thereto the name of 'R. C. Cameron & Son,' as charged in the indictment, you will acquit the defendant," etc.

In our opinion the appellant was not injured by the refusal of the lower court to give this charge, and there was, therefore, no error by the lower court in refusing it.

4. In deciding this case at a former day of the term affirming it, we then declined to consider the statement of facts, which was filed beyond the time permitted by law, without proper order of the court allowing the additional time. Since then it has been shown to us that we are in error about that, and that the statement of facts was filed within the time permitted by law and as allowed by the court. So we have fully considered the statement of facts.

There being no reversible error in the trial of this case, the motion for rehearing will therefore be in all things overruled.

*Overruled.*