Douglas Charles GOLLIHAR,
Appellant,

v.

The STATE of Texas.

No. 669–99.

Court of Criminal Appeals of Texas.

May 16, 2001.

Michael D. Deegan, Forth Worth, for appellant.

Richard L. Hattox, Dist. Atty., Matthew Paul, State's Atty., Granbury, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, joined by PRICE, HOLLAND, JOHNSON and HOLCOMB, J.J.

Appellant was charged with and convicted of stealing a go-cart, valued at less than $1,500.00. On appeal, appellant claimed the evidence was insufficient to support his conviction because the indictment and the jury charge alleged the model number of the stolen cart to be 136202, but the evidence at trial showed the model number to be 136203. The Court of Appeals agreed and ordered an acquittal. *Gollihar v. State*, 991 S.W.2d 303 (Tex.App.—Texarkana 1999). We granted the State's petition for discretionary review to decide whether the Court of Appeals erred in holding the evidence insufficient.

### I.

Appellant's indictment alleged appellant "unlawfully appropriat[ed] one Go–Cart **Model 136202**, of the value of less than $1500." A Wal–Mart employee testifying for the State at trial answered affirmatively when asked if the cart taken was **model number 136203**. There was no other evidence as to the model number of the cart. The jury charge tracked the language from the indictment, requiring the jury to find that appellant stole a **model number 136202** go-cart.

Appellant raised legal insufficiency in the Court of Appeals, based on the failure of the State to prove the go-cart number as alleged in the indictment and charged in the jury charge. Relying to some extent on *Weaver v. State*, 551 S.W.2d 419 (Tex. Crim.App.1977), and on *Ortega v. State*, 668 S.W.2d 701 (Tex.Crim.App.1983)(opinion on reh'g), the Court of Appeals held that the State was bound to shoulder the burden alleged in the charge, since it had not objected to the charge. *Gollihar*, 991 S.W.2d at 305-07. Because the charge

required the State to prove a specific model number of the stolen property and this fact was not proven as alleged, the evidence was insufficient to sustain the jury's verdict. *Id.* at 307. The Court of Appeals referred to the "fatal variance" doctrine as requiring a showing that the variance between the indictment allegations and the evidence is "material," but said this doctrine did not apply here because "the complaint on appeal is the variance between the proof and the jury charge-not between the indictment and jury charge." [1] *Id.* at 305. Finally, the court viewed *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App. 1997), as establishing a "sweeping change in the law requiring the sufficiency of the evidence to be measured by the elements of the offense as defined by a hypothetically correct jury charge," but said *Malik* did not apply to the instant case because *Malik* had not "involve[d] part of a legally essential element of the offense." *Gollihar,* 991 S.W.2d at 306–07. Noting that *Malik* did not expressly overrule *Ortega,* the Court of Appeals urged this Court to address *Ortega's* viability in light of *Malik. Id.* at 307.

The State claims the Court of Appeals erred in measuring sufficiency of the evidence against the charge given. Under *Malik,* the State argues, a hypothetically correct charge would not have permitted the State's burden to be increased by requiring proof of the model number. Final-

ly, the State says *Ortega* is inconsistent with *Malik* and should be overruled.

Appellant argues *Malik* is inapplicable to this case because *Malik* concerned error isolated in the jury charge. Here, there was no error in the jury charge because it tracked the indictment exactly. Appellant says extending *Malik* beyond its facts would result in overruling a long line of cases holding that the authorization paragraph in the jury charge can never contain "surplusage," as well as other cases such as *Weaver,* relied upon by the Court of Appeals. Appellant relies on *Ortega* to continue to stand for the proposition that the State is bound to shoulder the burden it alleged in the indictment and acquiesced in by failing to object to the charge.

This case implicates a number of different legal theories and their relationships to one another. Raised are questions of legal sufficiency of the evidence and how it is measured, variance law, and the law relating to surplusage. The overriding question is whether these areas of the law have been affected by the Court's opinion in *Malik.*

## II.

■ Sufficiency of the evidence law is based on due process.[2] In *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Supreme Court held that reasonable doubt was the constitutionally-required standard of proof in

---

1. In his brief to the Court of Appeals, appellant pointed to both the indictment and the jury charge in alleging the evidence legally insufficient:

 The state alleged and the court charged the specific model number of the go-cart. The state failed to offer evidence to prove the model number as charged.

 Appellant relied on cases before the Court of Appeals which held that surplusage in the jury charge must be proved as charged (i.e., *Fee v. State,* 841 S.W.2d 392 (Tex.Crim.App. 1992)), as well as cases pertaining to vari-

ances between the indictment and the proof (i.e., *Weaver v. State,* 551 S.W.2d 419 (Tex. Crim.App.1977)). We likewise read the Court of Appeals' holding as having two bases—it held the State was bound to prove the allegations in the jury charge, and, relying on *Weaver,* also held the State was bound to prove certain surplusage alleged in the indictment.

2. All references in this opinion to sufficiency of the evidence are to legal sufficiency of the evidence, as opposed to factual sufficiency of the evidence.

criminal cases: "Lest there be any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon *proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.*" (Emphasis added). Whether this standard compelled a new criterion by which the validity of a criminal conviction was tested by reviewing courts was addressed in *Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Prior to *Jackson,* the Supreme Court had held that a conviction supported by "no evidence" could not stand.[3] *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). The Supreme Court granted certiorari in *Jackson* to decide whether the reviewing court must consider "not whether there was *any* evidence to support a state-court conviction, but whether there was sufficient evidence to justify a 'rational trier of the facts to find guilt beyond a reasonable doubt.' " *Jackson,* 443 U.S. at 312–13, 99 S.Ct. 2781.

In answering this question, the Court began with some fundamental premises:

It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process.

These standards no more than reflect a broader premise that has never been doubted in our constitutional system: that *a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend.*

*Id.* at 315, 99 S.Ct. 2781 (citations omitted)(emphasis added). The Court further explained that a meaningful opportunity to defend presupposes, as was held in *Thompson,* that a total absence of evidence to support a charge will conclude the case in favor of the defendant. And due process further requires that the State provide proof beyond a reasonable doubt of every element of the crime charged.[4] *Id.* at 319, 99 S.Ct. 2781.

### III.

A "variance" occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument. 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 31.81 at 178 (1995). Although variance law pre-dates *Jackson,*[5] it has since been viewed by this Court as subsumed by the *Jackson* standard and

---

**3.** In *Thompson,* the Court held that a criminal conviction could not be sustained based upon a record that contained "no evidence" of the charged offense. *Thompson,* 362 U.S. at 206, 80 S.Ct. 624. As explained in *Jackson,* the "no evidence" standard in *Thompson* ensured the due process right of freedom from a wholly arbitrary deprivation of liberty. *Jackson,* 443 U.S. at 314, 99 S.Ct. 2781. The question in *Thompson* was not the *sufficiency* of the evidence, but whether the conviction "rest[ed] upon any evidence at all." *Thompson,* 362 U.S. at 199, 80 S.Ct. 624.

**4.** The *Thompson* "no evidence" standard was held to be inadequate protection against potential misapplication of the reasonable-doubt standard. *Id.* at 319–20, 99 S.Ct. 2781. The relevant question for reviewing courts, in or-

der to safeguard the commands of *Winship,* is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." A year before *Jackson,* the Supreme Court delivered *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), which held that retrial is barred after an appellate determination of insufficient evidence. Thus, the remedy for a finding of legally insufficient evidence on appeal is acquittal.

**5.** Legal commentators George Dix and Robert Dawson date its origins in Texas as early as 1870. 42 GEORGE E. DIX & ROBERT O. DAWSON,

subject to *Burks.* *See Carter v. Estelle,* 691 F.2d 777, 781–82 (5th Cir.1982)(recognizing that "Texas courts have consistently [ ] held" variances between indictment and proof is evidentiary insufficiency requiring application of *Burks;* "variances ... are not regarded as mere trial error by the Texas courts but as evidentiary sufficiency"), *cert. denied,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); *see also Ward v. State,* 829 S.W.2d 787 (Tex.Crim.App.1992)(ordering acquittal due to alleged "fatal variance" between indictment and proof); *Wray v. State,* 711 S.W.2d 631, 634 (Tex.Crim.App.1986)("[i]f a variance exists between the allegations and the proof, it may render the evidence insufficient to sustain the conviction"); *Franklin v. State,* 659 S.W.2d 831 (Tex. Crim.App.1983). Some courts treat variance claims as a notice-related claim, distinct from an insufficiency of the evidence claim, but we have routinely treated variance claims as insufficiency of the evidence problems.[6]

The widely-accepted rule, regardless of whether viewing variance as a sufficiency

TEXAS PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 31.81 at 179 (1995). The United States Supreme Court recognized variance law at least as early as *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)(addressing materiality of variance between indictment allegations and proof at trial).

**6.** We note that some other jurisdictions have handled variance claims like insufficiency of the evidence claims, *U.S. v. Tsinhnahijinnie,* 112 F.3d 988 (9th Cir.1997)(questioned whether "evidence was sufficient, or there was a fatal variance between the indictment and evidence, as to when the crime occurred" and applied *Jackson v. Virginia* analysis); *United States v. Griffin,* 84 F.3d 912, 928 (7th Cir.)("[w]e characterize an appeal alleging a variance between the evidence adduced at trial and the number of conspiracies alleged in an indictment as 'a challenge to the sufficiency of evidence supporting the defendant's conspiracy conviction"), *cert. denied,* 519 U.S. 999, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996); *United States v. Tarantino,* 846 F.2d 1384, 1393–94 (D.C.Cir.)(applying *Jackson*-like sufficiency analysis to claim of variance in conspiracy case), *cert. denied,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988); *Lorance v. State,* 770 So.2d 644, 647–48 (Ala.Crim.App.1999)(argument as to variance between indictment and proof "goes to sufficiency of the evidence"); *Bennett v. Tennessee,* (Tenn.Crim.App.1998)(argument that there was a fatal variance between indictment and proof at trial viewed as sufficiency claim under *Jackson* ); *Ward,* 829 S.W.2d at 796 n. 21 (stating variance between indictment allegation and proof was insufficiency of evidence problem), *overruled, in part, on other grounds,*

*Riney v. State,* 28 S.W.3d 561 (Tex.Crim.App. 2000); *Deltenre v. State,* 808 S.W.2d 97 (Tex.Crim.App.1991)(variance between indictment allegations and proof resulted in legally insufficient evidence); *Franklin v. State,* 659 S.W.2d 831 (Tex.Crim.App.1983)(recognizing that evidence may be legally insufficient where there is variance between indictment allegations and proof), such approach is not necessarily mainstream. Probably the majority of courts treat variance as a notice-related problem that is distinct from insufficiency of the evidence. Although this Court has suggested in at least one case that variance law is not a type of an insufficiency of the evidence claim, *Lehman v. State,* 792 S.W.2d 82 (Tex.Crim.App.1990)(criticizing statement in another case as "confusing because it blurs the variance concept with the related but distinct notion of insufficient evidence"), we have nonetheless continued to treat variance as an evidentiary sufficiency issue under *Jackson* and *Burks.* A departure from that course is not warranted at this juncture, as our variance jurisprudence is not irreconcilable with recent cases such as *Malik,* as we will explain later, and it has not proven to be seriously unworkable. In these circumstances, our preference is to preserve existing law.

In his concurring and dissenting opinion, Judge Keasler says this Court has sometimes handled variance claims as a purely notice problem rather than an insufficiency of the evidence claim, citing three cases. *Concurring and dissenting opinion* at 4 n. 7 (Keasler, J.). The first case cited by Judge Keasler, *Martin v. State,* 152 Tex.Crim. 261, 213 S.W.2d 548 (1948), pre-dated *Jackson* and therefore cannot necessarily be viewed as a departure from a legal sufficiency analysis

of the evidence problem or as a notice-related problem, is that a variance that is not prejudicial to a defendant's "substantial rights" is immaterial.[7] In determining whether a defendant's substantial rights have been prejudiced in this context, two questions are generally asked:

> ... whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

*United States v. Sprick*, 233 F.3d 845, 853 (5th Cir.2000)(footnotes omitted); *see also Tsinhnahijinnie*, 112 F.3d at 991 (analyzing variance claim under *Jackson*, court stated that variance is immaterial where it is " 'not of a character which could have misled the defendant at the trial' and there is no danger of double jeopardy") (citations omitted); *Woods v. State*, 244 Ga.App. 359, 535 S.E.2d 524, 525 (2000)(analyzing variance claim under *Jackson*, court said proper inquiry focuses on materiality: allegations must sufficiently inform defendant of charges against him so as to enable him to present defense and not be taken by surprise and allegations must be adequate to

approach. In the second case cited by Judge Keasler, *Stevens v. State*, 891 S.W.2d 649 (Tex.Crim.App.1995), the Court of Appeals analyzed the question as a legal insufficiency problem and we granted review of that analysis. *Stevens*, 891 S.W.2d at 650 n. 1 (granting review to determine whether Court of Appeals erred in finding evidence to be sufficient in the face of a variance). Although *Stevens* spoke in terms of notice and surprise, we never distinguished these concepts from the Court of Appeals' sufficiency analysis. We therefore read our opinion as addressing these variance concepts in the context of a legal sufficiency of the evidence review. Finally, in *Rojas v. State*, 986 S.W.2d 241 (Tex.Crim.App.1998), cited by Judge Keasler, our discussion of the defendant's variance claim incorporated notions of both legal insufficiency and notice. *Rojas*, 986 S.W.2d at 245–46 (addressing variance claim by pointing out that State "was required to prove beyond a reasonable doubt" that the defendant caused the victim's death in the manner alleged in the indictment, and that "the State is bound by the theory alleged in the indictment, as is the reviewing court in its sufficiency analysis" and stating that "a variance between the indictment and the evidence at trial may be fatal to a conviction, because Due Process guarantees the defendant notice of the charges against him" and concluding that "the evidence supported the indictment" and that the proof was consistent with the indictment). While treating variance claims solely as notice issues, distinct from a legal sufficiency of the evidence problem, as proposed

by Judge Keasler, is an approach taken by a number of courts, it is not the path that this Court has consistently taken when faced with variance claims.

7. We note that other courts which, like Texas, have treated variance as a sufficiency of the evidence problem, also require materiality in the same manner that it is required in the notice context. *See United States v. Sprick*, 233 F.3d 845 (5th Cir.2000); *Tsinhnahijinnie*, *supra*; *Sterling v. State*, 178 Ga.App. 845, 344 S.E.2d 766 (1986).

A materiality or harmless error-type requirement is not generally a component in traditional sufficiency of the evidence analysis, and we have never addressed why it has been required in the context of a variance-insufficiency claim. We would venture to say the explanation is two-fold. First, in a variance situation, unlike a standard insufficiency claim, the State, by all accounts, has proven that the defendant committed a crime. The only question is whether it has proven the details as it alleged in the indictment. Because a crime has admittedly been proven, acquittal does not seem appropriate without some inquiry into the materiality of the failed proof. Second, the materiality requirement appears to have been derived from the test traditionally applied by courts when viewing variance solely as a notice-related doctrine, distinct from sufficiency of the evidence. But materiality is not a concept wholly without basis in the sufficiency of the evidence context, given *Jackson's* emphasis on notice and meaningful opportunity to defend.

protect defendant against another prosecution for same offense); *State v. Walker*, No. 02C01–9707–00258 slip op., 1998 WL 960256 (Tenn.Crim.App. Sept. 3, 1998)(variance is not material "where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense"). A material variance is sometimes referred to as a "fatal variance."

We have not been consistent in requiring materiality, but have sometimes reversed upon a finding of variance without exploring the further question of materiality. *Compare Rowan v. State*, 57 Tex. Crim. 625, 124 S.W. 668 (1910)(variance is not material unless it could mislead defense or expose defendant to danger of subsequent prosecution for same offense); *Plessinger v. State*, 536 S.W.2d 380 (Tex.Crim.App.1976)(holding variance in style of case pled for enhancement not material where defendant not surprised or misled to his prejudice) *with Pedrosa v. State*, 155 Tex.Crim. 155, 232 S.W.2d 733 (1950)(declining to apply materiality requirement, instead holding case reversible due to variance between pled name of rape victim, "Seanda Acosta," and proven name of victim, "Senaida Acosta," even though it was shown that defendant knew he was accused of raping Senaida). Nonetheless, our most recent word on the matter was a reaffirmation of the fatal variance doctrine. *Stevens v. State*, 891 S.W.2d 649, 650 (Tex.

Crim.App.1995). In *Stevens*, the indictment alleged the defendant committed aggravated sexual assault against "100589–040584." At trial, both parties referred to the victim by her legal name, but the State never offered any proof that the victim and the alleged number were the same person. The defendant claimed the evidence was insufficient to support his conviction. Applying a materiality requirement, we held that the variance between the indictment and proof did not operate to the defendant's surprise or prejudice his rights. The defendant was provided the victim's name on the witness list, and the defendant's own pleadings referred to the victim by her legal name. *Id.* at 650–51. Throughout the pretrial proceedings and trial, both parties referred to the victim by her legal name. Thus, the variance was not material.[8] *Id.* at 651.

Past inconsistencies in our application of the fatal variance doctrine may in part be due to the development of a sometimes conflicting line of cases establishing the "surplusage" doctrine and its exception. Surplusage has been described as an allegation in the charging instrument that is not legally essential to constitute the offense. *Eastep v. State*, 941 S.W.2d 130, 134 (Tex.Crim.App.1997). Surplusage may often be responsible for a variance between the pleading and the proof. The general rule regarding surplusage is that "allegations which are not essential to constitute the offense, and which might be entirely omitted without affecting the

---

8. In a more recent case we recognized *Stevens* as maintaining materiality as a component in variance analysis. *Rojas v. State*, 986 S.W.2d 241 (Tex.Crim.App.1998). There, the indictment alleged the defendant caused the death of the victim by shooting her with a firearm. Based on medical testimony that the cause of death was asphyxiation, the defendant argued that because the State alleged specific information descriptive of an essential element of the offense (manner and means of death), the State was required to prove it as alleged. *Rojas*, 986 S.W.2d at 245–46. The Court, albeit in dicta, noted the materiality requirement, citing *Stevens*, supra, and reiterated that "only a material variance is fatal [and a] variance between the charging instrument and the proof at trial is material only if it operated to the defendant's surprise or prejudiced his rights." *Id.* at 246.

charge against the defendant, and without detriment to the indictment, are treated as surplusage" and may be disregarded. *Whetstone v. State,* 786 S.W.2d 361, 364 (Tex.Crim.App.1990). This rule is generally consistent with variance law's materiality requirement because an allegation that is not essential to constitute the offense and the omission of which would not affect the charge against the defendant or be detrimental to the indictment, will likely also not be "material" within the meaning of the fatal variance doctrine. So it may be disregarded as surplusage and an immaterial variance.

The exception to the general surplusage rule, however, may run counter to the fatal variance doctrine. The exception provides that where an extra or unnecessary allegation "is descriptive of that which is legally essential to charge a crime, the State must prove it as alleged though needlessly pleaded." *Eastep,* 941 S.W.2d at 134 n. 7. As further explained,

> For example, when an indictment describes a necessary person, place, or thing with unnecessary particularity, the State must prove all circumstances of the description. *Burrell,* 526 S.W.2d at 802. In *McClure v. State,* 163 Tex.Crim. 650, 296 S.W.2d 263, 264 (App.1956), "on the premises at the Alamo Cafe located at Cleveland and Second Streets, City of Memphis, Texas" was not surplusage and the State had to prove the exact location. Likewise in Cohen v. State, 479 S.W.2d 950 (Tex.Cr.App.1972), when the State alleged a particular block in which illegal fireworks were transported, we held the street address was not surplusage, therefore, the State had to prove the exact address. See also, Weaver v. State, 551 S.W.2d 419 (Tex.

Cr.App.1977) ("Ruger" not surplusage because the gun could be a "Luger.").

*Id.; see also Curry v. State,* 30 S.W.3d 394, 399 (Tex.Crim.App.2000). This special exception to the general surplusage rule (hereinafter called the "*Burrell* exception" because it is often attributed to *Burrell v. State,* 526 S.W.2d 799 (Tex.Crim.App. 1975)), does not employ any materiality requirement. It is as if unnecessary allegations that are descriptive of that legally essential to charge a crime are presumed to be material.

A prime example of the *Burrell* exception is *Weaver v. State, supra,* relied upon by the Court of Appeals in the instant case. There, the indictment alleged that the defendant "use[d] a deadly weapon, to-wit: **22 caliber Ruger** automatic pistol...." *Weaver,* 551 S.W.2d at 419–20. The evidence at trial established that the pistol used was a .22 caliber "L.R. Luger." The defendant claimed on appeal that the evidence was insufficient due to the variance between the indictment allegations and the proof. We settled the question solely on the basis of the *Burrell* exception, without any mention of fatal variance law, even though *Weaver* presented a classic variance problem.[9]

## IV.

The Court of Appeals and the parties question whether this Court's opinion in *Malik* has affected variance law, the surplusage doctrine and the *Burrell* exception. The State further points to *Ortega* as inconsistent with *Malik* and appellant argues that extending *Malik* would require overruling of the long-standing *Burrell* exception.

---

9. That is, the State had proven the commission of aggravated assault with a deadly weapon, but had ~~not~~ proven its commission with a "Luger" instead of a "Ruger," as alleged in the indictment.

Prior to *Malik*, the prevailing authority on sufficiency of the evidence review, referred to as the *Benson/Boozer* line of cases, held that sufficiency of the evidence was measured by the jury charge actually given.[10] If the jury charge burdened the State beyond that which was legally required and beyond the allegations in the indictment, but the State failed to object to the additional burden in the charge, the State was bound to prove the allegations as set forth in the charge. The State was viewed as having acquiesced in the additional burden.

Consistent with *Benson/Boozer*, *Ortega* held that indictment surplusage which is tracked in the application paragraph of the jury charge had to be proven by the State. There, the indictment alleged the defendant used a credit card to fraudulently obtain "property and services." *Id.* at 706. The application paragraph of the jury's charge likewise instructed the jury to find that the defendant fraudulently obtained "property and services" in order to find him guilty. Under the controlling statutory provision, obtaining property *or* services was all that was required for the commission of a crime. We held that "because the charge instructed the jury that it *must* find both property *and services* before returning a guilty verdict, then it was necessary that there be sufficient proof of *both* means alleged." *Id.* at 707 (emphasis in original). We noted

> "[T]here is no such thing as 'surplusage' in the part of the court's instructions to the jury which authorizes a conviction, and if the prosecutor believes that portion of the charge unnecessarily increases his burden of proof, it behooves him specifically to request a charge which correctly allocates burden placed on him by law. . . ."

*Id.* n. 5 (quoting Judge Clinton from his opinion on original submission in *Ortega* ). The Court's opinion did not attempt to explain the surplusage in terms of the *Burrell* exception or materiality, but focused on the fact that it was placed in the application paragraph of the jury instructions.

The *Malik* Court held the *Benson/Boozer* rule at odds with the purpose of *Jackson*, which, we explained, was to ensure

---

**10.** In *Benson v. State*, 661 S.W.2d 708 (Tex.Crim.App.1982)(opinion on second motion for reh'g), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984), *overruled by Malik v. State*, 953 S.W.2d 234 (Tex. Crim.App.1997), the indictment alleged that the defendant committed burglary with intent to commit retaliation. The jury charge more specifically defined retaliation as actions of the defendant "in retaliation for or on account of *the service of another as a witness.*" *Id.* at 712 (emphasis in original). The evidence did not show the victim to be a witness. Explaining that the charge, if un-objected to, reflects the State's theory of the case, we held the State was bound to prove the allegations in the jury charge. *Id.* at 715–16. Because the proof did not support the theory of the case as set forth in the jury charge, the evidence was insufficient. °

In *Boozer v. State*, 717 S.W.2d 608 (Tex. Crim.App.1984), *overruled by Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App.1997), the jury charge included an accomplice witness instruction, requiring the jury to find the testimony of the accomplice to be corroborated. The State did not object to the inclusion of the charge. We emphasized that "sufficiency of the evidence is measured by the charge *that was given.*" *Id.* at 610. Because the testimony was not sufficiently corroborated, the evidence was insufficient.

An exception to the *Benson/Boozer* cases was articulated in *Ortega*, 668 S.W.2d at 705 n. 10 (opinion on original submission). Where the State objects to a jury charge that increases its burden beyond that required by law, but the objection is overruled and the evidence is found insufficient on the basis of the instructions objected to by the State, the result is "trial error" (due to the trial court's errors in submitting the charge over the State's objections), not evidentiary insufficiency.

that convictions of innocent persons would not be sustained. *Malik*, 953 S.W.2d at 239. Under *Benson/Boozer*, persons who were guilty of the crime alleged in the indictment could nonetheless be acquitted on appeal due to the State's error in failing to object to a jury charge that increased the State's burden beyond that required by law. *Id.* The Court expressly overruled the *Benson/Boozer* line of cases and established a new standard by which to review sufficiency of the evidence. "No longer [would] sufficiency of the evidence be measured by the jury charge actually given" but rather it would "be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Id.* at 239–40.

■ As stated above, the basis for our holding in *Ortega* was the fact that the surplusage appeared *in the application paragraph of the jury charge*, requiring the jury to pass on it. That these allegations were made in the indictment before being transferred to the jury instructions was not stated as a factor in the Court's holding that they must be proved. The reasoning underlying *Ortega* is exactly the same as that supporting the *Benson/Boozer* line of cases—that allegations made in the jury charge had to be proved.[11] *Malik* flatly rejected use of the jury charge actually given as a means of measuring sufficiency of the evidence. We accordingly hold that *Malik* overruled *Ortega* to the extent *Ortega* held evidentiary sufficiency

should be measured by allegations in the application paragraph of the jury charge actually given. The Court of Appeals erred in relying on *Ortega* to hold that the State was bound to shoulder the allegations made in the jury charge concerning the model number of the go-cart.

## V.

The Court of Appeals also held the evidence was insufficient to prove the allegations in the indictment, apart from the jury charge.[12] This raises questions concerning the application of *Malik* in the absence of alleged charge error. Does *Malik's* hypothetically correct jury charge impact the indictment surplusage cases and the *Burrell* exception? More generally, does *Malik's* hypothetically correct jury charge incorporate the allegations exactly as they appear in the indictment or may some indictment allegations be disregarded?

The surplusage cases and the *Burrell* exception involve variances between the indictment allegations and the proof. Therefore, factually, *Malik* does not directly implicate those cases because *Malik* did not involve a variance between the allegations in the indictment and the proof at trial. *Malik* involved a variance between the allegations in the jury charge and the proof.[13] But by requiring sufficiency to be measured by a hypothetically correct charge and defining that charge, in part, by reference to the indictment, we

---

**11.** We have linked the reasoning in *Ortega* with that of the Court in *Benson* and *Boozer*. *Fee v. State*, 841 S.W.2d 392 (Tex.Crim.App. 1992). In *Fee*, like in *Ortega*, the indictment allegations, which required more than was required by the controlling statute, were tracked exactly in the jury charge, without objection. We held the evidence insufficient based on the allegations in the jury charge, stating that "since Benson and Ortega we have steadfastly held that so long as the State does not object to a jury charge that thus enhances its burden, sufficiency of the evi-

dence will be measured·against that charge." *Fee*, 841 S.W.2d at 396 (citing *Boozer*, among other cases).

**12.** *See* n. 1, *supra*.

**13.** In *Malik*, the jury charge erroneously required the jury to pass on the legality of the defendant's detention. Whether or not the detention issue was alleged in the indictment was not discussed.

have viewed *Malik* as having broader ramifications.

The Court in *Malik* directed that "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case:"

> Such a charge would be one that accurately sets out the law, *is authorized by the indictment*, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.... The standard we formulate today ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted.

*Malik*, 953 S.W.2d at 240 (emphasis added). The Court did not state that the hypothetically correct charge was required to track exactly all of the allegations in the indictment, but only that the charge needed to be "authorized by the indictment." This is the only explicit reference to the indictment contained in *Malik's* description of a hypothetically correct charge.

Review of case law since *Malik* gives some indication that *Malik's* hypothetically correct charge may disregard certain unnecessarily pled indictment allegations on sufficiency review. But the Court is clearly not willing to allow the hypothetically correct charge to wholly re-write the indictment to charge a different offense.

In *Rosales v. State*, 4 S.W.3d 228 (Tex. Crim.App.1999), the Court indicated a willingness, per dicta, to extend *Malik* in such a way as to eliminate a long-standing requirement that the State prove certain allegations in the indictment. The indictment in *Rosales* alleged the defendant killed the victim "by stabbing with a knife and striking her with a hard object the exact nature of which is unknown to the grand jury." The defendant claimed the evidence was insufficient to support his conviction because the State failed to prove the grand jury used due diligence in determining nature of the hard object, as alleged in the indictment. The defendant relied upon *Hicks v. State*, 860 S.W.2d 419 (Tex.Crim.App.1993), *cert. denied*, 512 U.S. 1227, 114 S.Ct. 2725, 129 L.Ed.2d 848 (1994), which held that when the indictment alleges the manner and means of inflicting the injury was to the grand jury unknown and the evidence at trial established the manner and means, the State is required to prove the grand jury used due diligence in attempting to ascertain such information. While the Court gave several reasons for overruling the point of error, it noted that *Hicks* and cases like it were "no longer viable in light of our decision in Malik." *Rosales*, 4 S.W.3d at 231. This statement suggests that a hypothetically correct charge would not have included the contested indictment allegation.

Despite the suggestion in *Rosales* that *Malik* could or should be extended in such a way as to impact indictment allegations, the Court has recognized limits to the reach of *Malik* on indictment allegations. In *Planter v. State*, 9 S.W.3d 156 (Tex. Crim.App.1999), the indictment alleged the defendant "requested, commanded and attempted to induce Lex Baquer to engage in specific conduct, namely to kill Bob Fratta." The evidence established that the defendant had requested or attempted to induce Baquer *to pay the defendant* to kill Fratta. The Court agreed with the defendant that the evidence did not support the offense as alleged in the

indictment.[14] Three judges argued that application of the principles in *Malik* would render the evidence sufficient. *Id.* (McCormick, P.J., Keller and Womack, J.J., all filed dissenting opinions). Judge McCormick argued that when there is no alleged jury charge error, *Malik* directs that the only question is whether the "elements of the offense" were proven, and that in such circumstances, there is no need for a hypothetically correct jury charge in reviewing sufficiency of the evidence. Judges Keller and Womack viewed the evidence as sufficient by applying a hypothetically correct jury charge under which a parties theory would sustain the conviction. *Id.* at 161 (Keller, J., dissenting); *id.* at 162 (Womack, J., dissenting). In response to the dissents, the majority stated that under *Malik*, "the indictment [is] the basis for the allegations which must be proved" and that the hypothetically correct jury charge for the case must be "authorized by the indictment." *Id.* at 159 n. 5 & 6.

*Curry v. State*, 30 S.W.3d 394 (Tex. Crim.App.2000), provides some insight into *Malik's* requirements for a hypothetically correct charge. In that case, the indictment alleged aggravated kidnaping by using and threatening to use deadly force, a firearm. The State was permitted at trial to delete the phrase pertaining to the use of a firearm. We held the amendment was allowed in error because the deleted phrase was not surplusage. *Curry*, 30 S.W.3d at 403. Because a statutory alternative "manner or means" of engaging in an act, omission or conduct was an integral part of an essential element of the offense of kidnaping,[15] it should not have been deleted. Therefore, the unmodified indictment remained in effect. *Id.* at 404.

Addressing the sufficiency of the evidence, we examined each of *Malik's* directives for a hypothetically correct charge.[16] We stated that, under *Malik*, the law as "authorized by the indictment" was the statutory elements of the offense "as modified by the charging instrument." *Id.* Thus, we explained, a hypothetically correct jury charge would not simply quote from the controlling statute. For example, it could not merely state that the defendant should be found guilty if he abducted "another person," when the indictment specifically alleged the defendant abducted "Williams." Likewise, when the controlling statute lists several alternative acts intended by the defendant and the indictment limits the State's options by alleging certain of those intended acts, the hypothetically correct charge should instruct the jury that it must find one of the intended acts alleged in the indictment.[17]

---

**14.** The Court explained

The offense in the instant case, as alleged in the indictment and set out in the jury charge, was that appellant "requested, commanded and attempted to induce Lex Bacquer to engage in specific conduct, namely, to kill Bob Fratt[a]." The evidence does not show that appellant attempted to request, command or attempt to induce Bacquer to kill Fratta. Instead, it shows that appellant attempted to request, command or attempt to induce Bacquer to pay appellant to kill Fratta. The evidence introduced at trial by the state proved an offense different from the offense alleged in the indictment and set out in the jury charge and is therefore insufficient to show that appellant is guilty, either as a primary actor or as a party, of the conduct alleged by the state. *Planter*, 9 S.W.3d at 159.

**15.** We specifically rejected the State's argument that the alternative manner and means was merely descriptive of an element. *Curry*, 30 S.W.3d at 403.

**16.** We noted that the directives given in *Malik* did not comprise an exhaustive list. *Curry*, 30 S.W.3d at 404.

**17.** We explained,

Similarly, the hypothetically correct jury charge could not simply track the statute,

This is the "law" "as authorized by the indictment." *Id.* at 404-05. Similarly, when the statute defines alternative methods of manner and means of committing an element and the indictment alleges only one of those methods, "the law" for purposes of the hypothetically correct charge, is the single method alleged in the indictment.[18] *Id.* at 405.

Moreover, it did not "unnecessarily increase the State's burden of proof" to include in the hypothetically correct charge the phrase "using and threatening to use deadly force namely, a firearm," which we had recognized was not surplusage, but was a statutorily alternative manner or means that was required to be alleged in the indictment in order to give proper notice.[19] Further, we held that inclusion of such phrase would "adequately describe the particular offense" for which the defendant was tried, within the meaning of *Malik.*

One basic premise that can be confirmed by the above post-*Malik* cases is that we have interpreted *Malik* to control sufficiency of the evidence analysis *even in the absence of alleged jury charge error.* *Curry; Planter.* Other principles can be gleaned from the above cases. A hypothetically correct charge has its basis in the indictment allegations.[20] *Curry;*

alleging the Curry abducted Williams "with the intent to [either] (1) hold him for ransom or reward; (2) use him as a shield or hostage; (3) facilitate the commission of a felony *or the flight after the attempt or commission of a felony;* (4) inflict bodily injury on him or violate or abuse him sexually; (5) terrorize him or a third person; or (6) interfere with the performance of any governmental or political function." The indictment specifically limited the State's allegations to options (4) and (5). So in terms of "setting out the law" as "authorized by the indictment," Curry's hypothetically correct jury charge would have to instruct the jury that, to find Curry guilty, they must find that he intentionally or knowingly abducted Williams with the intent to inflict bodily injury on him, violate or abuse him sexually, or terrorize him. *Curry,* 30 S.W.3d at 404-05.

18. The indictment in *Curry* alleged abduction with intent to prevent the victim's liberation by using and threatening to use deadly force. The Penal Code defined abduction as meaning restraint of the victim with intent to prevent his liberation in one of two ways: by secreting or holding the victim in a place he is not likely to be found or by using or threatening to use deadly force. We explained why this indictment allegation was not surplusage that could be disregarded:

An essential element of abduction is that the defendant intended to prevent the liberation of the complainant. Without this accompanying mental state, there is no ab-

duction; there is only restraint. The accompanying mental state is what transforms mere restraint into abduction. So there is nothing "peripheral" about this intent element. The two alternative mental states provided in the statute are the "manner or means" of engaging in the conduct of abduction.... We have never before held that a statutory alternative "manner or means" of engaging in an act, omission, or conduct constitutes surplusage.... We decline the State's invitation to create this new rule today.... [W]e ... hold that the State must allege, in the face of a motion to quash, which type of abduction it seeks to prove in order to give the defendant notice.

*Curry,* 30 S.W.3d at 403.

19. While we stated that the "State is simply required to prove what it alleged," *Curry,* 30 S.W.3d at 405, we do not view this statement as meaning that everything the State alleges in the indictment necessarily has to be included in the hypothetically correct charge and proved. We were specifically addressing there their inclusion of the phrase "by using and threatening to use deadly force, namely a firearm" which we had previously held was not surplusage and was required to be included in the face of a motion to quash, in order to give notice. *See* n. 18, *supra.*

20. The notion that sufficiency of the evidence should be measured by the elements of the offense as set out in penal code provision without reference to the indictment allega-

*Planter.* For instance, the hypothetically correct charge would include an indictment allegation which is necessary to give the defendant adequate notice of the charge against him so as to meaningfully defend himself. *Curry, supra* (alternative statutory manner or means of engaging in act or omission which was integral part of essential element would be part of "law authorized by indictment" under *Malik*). On the other hand, there is some suggestion, per dicta in *Rosales,* that certain indictment allegations may be disregarded in fashioning a hypothetically correct charge. *See Rosales, supra.* *Rosales* itself did not elaborate on this, except to point to *Malik* at pages 239–40. The Court's discussion on those pages of the *Malik* opinion focused on its disapproval of the *Benson/Boozer* cases. We viewed "the *Benson/Boozer* rule [as] inherently at odds with the purpose of the *Jackson* sufficiency standard." *Malik,* 953 S.W.2d at 239. While the "*Jackson* standard was established to ensure that innocent persons would not be convicted," under *Benson/Boozer* a person guilty of the crime charged could be acquitted on appeal based upon a jury charge that increased the State's burden beyond that required by law. *Id.* Further explanation for the Court's suggestion in *Rosales* that not all indictment allegations would be included in a hypothetically correct charge lies in the Court's view expressed in *Malik* that a *Jackson* review ought to be limited to "essential elements" of the offense. *Malik,* 953 S.W.2d at 236 (agreeing that "the State's contention that *Jackson,* by its wording, applies only to elements of the offense is a cogent one"); *see also id.* at 237 (under *Jackson,* sufficiency review questions whether any rational trier of fact could have found "*essential elements*", emphasized by Court).

 In light of the principles underlying *Malik* and the above post-*Malik* cases, we hold that a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances. *See and compare Rosales, supra* (indicating non-essential element allegation might be excluded from hypothetically correct charge) *with Planter, supra* (hypothetically correct charge may not allow State to prove offense different than one alleged in indictment) *and Curry, supra* (statutory alternative manner and means that was integral part of essential element and was required to be pled in face of motion to quash should be included in hypothetically correct charge). In so holding, we reaffirm the fatal variance doctrine and overrule surplusage law and the *Burrell* exception.[21] We take this action due in large

tions, can be put to rest. *Curry,* 30 S.W.3d at 404; *see also Planter,* 9 S.W.3d at 159 n. 5 (emphasizing that *Malik* requirement that sufficiency be measured by elements of offense *as defined by hypothetically correct charge must have basis in indictment*). The indictment allegations are "the basis" of what must be proved and the hypothetically correct charge must be "authorized by the indictment ." Thus, the hypothetically correct charge may not modify the indictment allegations in such a way as to allege "an offense different from the offense alleged in the indictment." *Planter,* 9 S.W.3d at 159. Indictment allegations that are not surplusage, are statutorily alternative manner or means and

thus required to be alleged in order to give proper notice are likewise necessary to "adequately describe the offense" and therefore must be included in a hypothetically correct charge. *See Curry; see* n. 17–19, *supra.*

21. While surplusage law, without the *Burrell* exception, is generally consistent with the policies expressed in *Malik* and its subsequent cases and might be maintained, we have opted for a simpler approach by allowing the fatal variance doctrine to resolve surplusage problems. If the allegation is one which would be considered "surplusage" in that it is not essential to constitute the offense and might be entirely omitted without affecting

part to the inconsistencies between the *Burrell* exception and the fatal variance doctrine. We decline to further perpetuate these sometimes conflicting lines of cases, given this opportunity to right past inconsistencies and render the case law as consistent as possible with the current law, *Malik*, and its stated policies. In light of the long-standing conflict between the *Burrell* exception and the fatal variance doctrine, in light of this Court's more recent affirmation of the fatal variance doctrine,[22] and in light of our stated policy in *Malik* to bring our state courts' sufficiency of the evidence review in line with *Jackson* and federal constitutional requirements, we overrule the surplusage rule and its *Burrell* exception, but reaffirm the fatal variance doctrine. We adopt the materiality test applied by many other courts including the Fifth Circuit: [23]

> A variance between the wording of an indictment and the evidence presented at trial is fatal only if "it is material and prejudices [the defendant's] substantial rights." When reviewing such a variance, we must determine whether the indictment, as written, informed the de-

fendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

*Sprick*, 233 F.3d at 853 (footnotes omitted). In summary, we hold that when faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a "material" variance will render the evidence insufficient.[24] Thus, the hypothetically correct charge will take into consideration the fatal variance doctrine formerly expressed by this Court and today reaffirmed. Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included.

## VI.

■ Applying these principles to the instant case, the question is whether the variance between the model number of the go-cart alleged in the indictment and the

---

the charge against the defendant, and without detriment to the indictment, then it would rarely meet the test of materiality. We see little value in maintaining both doctrines.

22. *Stevens, supra; Rojas, supra.*

23. This test is nearly identical to one recognized by this Court as far back as 1911:

> "A variance is not now regarded as material unless it is such as might mislead the defense, or might expose the accused to the danger of being put twice in jeopardy for the same offense."

*Feeny v. State*, 62 Tex.Crim. 585, 138 S.W. 135, 138 (1911)(op. on reh'g)(quoting with approval rule cited by advocate in *Rowan v. State*, 57 Tex.Crim. 625, 124 S.W. 668 (Tex. Crim.App.1910)); *see also Jones v. State*, 115 Tex.Crim. 418, 27 S.W.2d 653, 656 (1930)(quoting Wharton's on Evidence favorably, "The modern rule is that a variance in

name is not now regarded as material, unless it appears to the court that the jury was misled by it, or some substantial injury is done to the accused, such as that, by reason thereof, he was unable intelligently to make his defense, or he was exposed to the danger of a second trial on the same charge"). While our more recent articulations of the rule have not expressly referred to the danger of being twice put in jeopardy, such a danger would most certainly be prejudicial to the defendant's rights. *See Rojas*, 986 S.W.2d at 246 (stating rule that variance is fatal if operated to defendant's surprise or prejudiced his rights).

24. Our holding today would not preclude an appellant from raising a purely "lack of notice" claim that is not tied to legal sufficiency of the evidence. An appellant may want to raise a variance/insufficiency claim, as described above, as well as a purely notice claim.

model number actually proved was a "material" one that prejudiced appellant's substantial rights. That is, did the indictment inform appellant of the charge against him sufficiently to allow him to prepare an adequate defense at trial and would the indictment subject appellant to the risk of being prosecuted later for the same crime?

We note at the outset that the State was not required to plead the model number of the stolen cart in order to give adequate notice of the charges against appellant. Code of Criminal Procedure article 21.09 provides in part that "[i]f known, personal property alleged in an indictment shall be identified by name, kind, number, and ownership." TEX.CODE CRIM. PROC. art. 21.09. "Number," within the meaning of this provision, has been interpreted to mean quantity. *Wood v. State,* 632 S.W.2d 734, 736 (Tex.Crim.App.1982). There is no indication in the record that appellant did not know what cart the State was claiming he stole or that appellant was misled by the allegation or surprised by the proof at trial. The needless allegation of the wrong model number did not impair appellant's ability to prepare his defense. Appellant did not attempt to raise a defense that he did not take the cart alleged or that the State had misidentified the allegedly stolen property. Rather, appellant admitted taking the cart, but claimed he thought it had been paid for by a friend. Appellant's defense did not depend upon the model number alleged. Neither does the needless allegation of the model number subject appellant to the risk of being prosecuted later for the same crime. Appellant is in no danger of being prosecuted again for theft of the same cart proved at trial. *See United States v. Apodaca,* 843

F.2d 421, 430 n. 3 (10th Cir.)(entire record, not just indictment, may be referred to in protecting against double jeopardy in event of subsequent prosecution), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988). We hold the variance was not material, and therefore should be disregarded in a sufficiency of the evidence review under a hypothetically correct jury charge. Because appellant's insufficiency claim is based solely on the variance, our inquiry is ended. An immaterial variance is disregarded in a sufficiency of the evidence review. Appellant's claim has no merit.

The judgment of the Court of Appeals is reversed and this case is remanded to that court for further proceedings not inconsistent with this opinion.[25]

KELLER, P.J., filed a concurring opinion, joined by WOMACK, J.

KEASLER, J., filed a concurring and dissenting opinion, joined by HERVEY, J.

KELLER, P.J., filed a concurring opinion in which WOMACK, J., joined.

Under *Malik,* the sufficiency of the evidence is measured "by the elements of the offense as defined by the hypothetically correct jury charge for the case."[1] This hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[2] The focus of the inquiry is upon the elements of the offense. *Malik* requires a hypothetically correct charge

---

**25.** Because of its disposition of the case on grounds of legal insufficiency, the Court of Appeals did not address all of the issues raised by appellant.

**1.** *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

**2.** *Id.*

because measuring sufficiency by reference to the indictment ignores some important issues relating to sufficiency, such as the law of parties.[3] The hypothetically correct charge is a mechanism by which we determine what must be proven. Today we are confronted with the question of whether, using this mechanism, a go-cart serial number must be proven

As the Court explains, for something to be an element of the offense in a hypothetically correct jury charge, it must be "authorized by the indictment." In *Curry*, we explained that the law as "authorized by the indictment" entails "the statutory elements of the offense ... as modified by the charging instrument."[4] When the indictment alleges some, but not all, of the statutorily listed methods of committing an offense, the State is limited to the methods alleged.[5] In *Curry*, for example, the indictment alleged only one of two possible ways to "abduct" someone: using or threatening to use deadly force.[6] The State could not expand the bases of the defendant's liability to include the other definition of "abduct" contained in the statute because the indictment limited the State to the version of "abduct" that was alleged.[7] Likewise, in *Planter*, the State was limited to the theory of solicitation of capital murder alleged in the indictment.[8] The Penal Code provides two different methods of committing murder for hire: 1) by committing the murder for remuneration or the promise of remuneration, and 2) by employing another to commit the murder for remuneration or the promise of remuneration.[9] The indictment in *Planter* alleged solicitation of capital murder under the first method but not the second.[10] But the evidence at trial showed the second method but not the first.[11]

*Curry* and *Planter* both involved statutorily listed descriptions of offense elements. The State chose to allege some, but not all, of the statutorily listed methods of committing the offense provided by the legislature. The present case involves a different situation: a descriptive averment that is not statutorily listed. The identity of a murder victim, the location of a building that was burglarized, and the description of an item that was stolen are all examples of descriptions of an offense element where the description is not listed in the statute. An indictment may contain such descriptive averments but the question is whether those averments would carry over into a hypothetically correct jury charge. Because, unlike the descriptive averments in *Curry* and *Planter*, they are not required to be pled, the answer is "no."

In this case, the go-cart's serial number need not have been pled. The State was not required to allege it in the indictment. If the State had failed to allege the serial

---

3. *Id.* at 239

4. *Curry v. State,* 30 S.W.3d 394, 404 (Tex. Crim.App.2000).

5. *Id.* at 404–405.

6. *Id.* at 405.

7. *Id.*

8. *Planter v. State,* 9 S.W.3d 156, 159 (Tex. Crim.App.1999).

9. § 19.03(a)(3).

10. *Planter,* 9 S.W.3d at 159 ("The offense in the present case, as alleged in the indictment ... was that appellant 'requested, commanded and attempted to induce Lex Baquer [sic] to engage in specific conduct, namely, to kill Bob Fratt[a].' ").

11. *Id.* ("The evidence does not show that appellant attempted to request, command or attempt to induce Bacquer to kill Fratta. Instead, it shows that appellant attempted to request, command or attempt to induce Bacquer to pay appellant to kill Fratta").

number, the defendant could not have succeeded in quashing the indictment on that basis. Failure to prove the correct serial number does not render the evidence insufficient.[12]

With these comments, I concur in the court's judgment.

KEASLER, J., delivered this concurring and dissenting opinion, in which HERVEY, J., joined.

I respect and appreciate the majority's attempt to clarify an unclear area of the law. But I would resolve the issues differently.

## I.

The majority concludes that our variance law conflicts with our surplusage law and, therefore, overrules all surplusage law. Rather than overruling surplusage law, I would seize this opportunity to clarify variance law.

The problem with our variance caselaw is our failure to distinguish between two different issues—lack of notice and insufficient evidence. The word "variance" has been used in analyzing both issues, but they are quite different. Both issues arise when the State alleges one fact in its indictment but proves another at trial.

For example, the State might indict a defendant for the murder of Jane Ann, but then prove at trial that he killed Joe Bob. On the one hand, the defendant could argue that he was denied notice of the alle-

gations against him. The defendant prepares a defense for the charge, as he has a sound alibi for the night Jane Ann was murdered. But when he gets to trial, suddenly the State puts forth evidence that he killed Joe Bob. The defendant is unprepared; the State has denied him any ability to prepare a defense for this charge. This defendant might argue on appeal that he was denied notice of the State's accusation against him. In analyzing his claim, we would consider the Constitution's requirement that a defendant be given notice of the allegation against him.[1] We would also consider whether the defendant was harmed by the lack of notice, that is, whether he was surprised to his detriment resulting in his inability ~~unable~~ to defend himself. If we found the defendant harmed, we would remand the case for a new trial, since the defendant should have an opportunity to prepare a defense against the State's charge.

On the other hand, the defendant could argue that the evidence was insufficient to convict him. While the State charged him with the murder of one individual, the State was unable to prove its allegation, instead proving the murder of a completely different person. In analyzing this claim, we would consider the requirement that the State prove all the elements of the offense beyond a reasonable doubt.[2] We would also consider our own caselaw which states that sufficiency of the evidence should be measured by the hypothetically

---

**12.** The Court overrules *Burrell v. State,* 526 S.W.2d 799 (Tex.Crim.App.1975). *Burrell,* however, did not involve sufficiency of the evidence. *Burrell* held that amending an indictment to remove allegations that were unnecessarily pled but that described an element of the offense was an impermissible amendment of substance. So, *Burrell's* analysis of indictment amendments should not be applied to the different question of evidence

sufficiency. Though the sufficiency analysis may in some cases (like *Curry*) include an analysis of whether an amendment was proper, the two issues should not be confused.

**1.** U.S. Const Amend. VI.

**2.** *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

correct jury charge.[3] If we found the evidence insufficient to convict, we would enter a judgment of acquittal.

As noted, these are two distinct claims to be analyzed differently. The majority states that "we have routinely treated variance claims as insufficiency of the evidence problems,"[4] but that fact neither addresses nor resolves the problem. Admittedly, claims that a variance deprived a person of notice are less common, but as I have explained, this is a legitimate claim which can be argued.[5] When it is asserted, it should be analyzed solely as a notice claim. Claims that a variance rendered the evidence insufficient are more common, but how we have addressed those claims is not at all routine. Sometimes we have analyzed whether the evidence was sufficient,[6] and sometimes we have analyzed whether the defendant was deprived of notice.[7] The majority perpetuates confusion in the law by analyzing Gollihar's sufficiency claim in terms of whether he received notice.

The majority explains its reasoning in footnote 7, but I remain unconvinced. First, the majority indicates that three other courts have analyzed sufficiency in terms of notice. Whether those courts do so or not does not persuade me that we should continue to do so.

The majority also states in this footnote that, while materiality generally has no place in a sufficiency analysis, it is appropriate in this context because in variance cases, "the State, by all accounts, has proven that the defendant committed a crime. The only question is whether it has proven the details as it alleged in the indictment."[8] But the real questions, to me, are whether a rational trier of fact could find the State proved all the elements of the offense beyond a reasonable doubt, and whether the State proved the elements as required by the hypothetically correct jury charge. I would resolve these questions without regard to notice. Whether the State has proven that the defendant committed "a" crime does not resolve, in my mind, whether the State has proven the defendant committed "the" crime with which he was charged.

Part of the problem may be the confusion between the concepts of notice and surprise and the concepts of materiality and harm. In notice cases, we might assess whether the defendant was harmed or surprised to the extent that the lack of notice was material. On the other hand, in sufficiency cases, notice and surprise should be irrelevant, but in limited circumstances, materiality may come into play. That is, there may be instances in which the State's failure to prove a particular fact alleged is immaterial-not relevant to its overall ability to prove its case. To me, this is far different from saying its failure to prove this fact is immaterial because the

---

3. *See Malik v. State*, 953 S.W.2d 234 (Tex. Crim.App.1997).

4. *Ante*, op. at 247.

5. *See Parker v. State*, 985 S.W.2d 460 (Tex. Crim.App.1999) (both sufficiency and notice claims raised, each analyzed separately); *see also Simpson v. State*, 821 S.W.2d 622 (Tex. Crim.App.1992) (separate notice and sufficiency claims raised, although court remands without addressing either).

6. *See Maldonado v. State*, 998 S.W.2d 239 (Tex.Crim.App.1999); *Huffman v. State*, 726 S.W.2d 155 (Tex.Crim.App.1987); *Thurmon v. State*, 145 Tex.Crim. 279, 167 S.W.2d 528 (1942).

7. *See Martin v. State*, 152 Tex.Crim. 261, 213 S.W.2d 548 (1948); *Stevens v. State*, 891 S.W.2d 649 (Tex.Crim.App.1995); *Rojas v. State*, 986 S.W.2d 241, 246 (Tex.Crim.App. 1998).

8. *Ante*, op. 248 n. 7.

accused received notice. I read the majority's opinion as approving our past cases which encompassed the notice-type of materiality—surprise—within the sufficiency analysis. I would not do so.

Finally, the majority concedes that this type of materiality was derived from the notice cases, but concludes that it is appropriate to include it within a sufficiency analysis based on *Jackson v. Virginia*. I read *Jackson* more narrowly. As I read it, *Jackson* merely holds that due process requires that the State prove a person guilty beyond a reasonable doubt, and that a reviewing court should assess whether any rational trier of fact could find all the elements of the offense beyond a reasonable doubt. Although *Jackson* mentions notice as another one of the guarantees of due process, I do not read *Jackson* to require or even encourage courts to analyze sufficiency claims by considering whether the defendant received notice.

I would hold that notice claims and sufficiency claims are different. I would hold that the word "variance" is just a word—it does not control the claim an appellant makes—and that courts should look beyond semantics. If an appellant argues he was denied notice of the charge against him, the court should consider whether that is so, and if so, whether he was surprised at trial. If an appellant argues the evidence was insufficient, the court should consider whether that is so without regard to any surprise or lack of notice. Whether the appellant or the State uses the word "variance" within its argument should have no affect on how the claim is analyzed.

To avoid confusion in the future, I would hold that, from now on, the word "variance" should only be used with notice claims. That does not prevent an appellant in any way from arguing that the

evidence was insufficient because the State failed to prove something that it alleged. An appellant can always make that claim, and appellate courts should consider that claim based on sufficiency caselaw, without regard to notice or surprise. But if an appellant or the State should use the word "variance" inappropriately, that oversight should not affect the appellate court's analysis of the case. The appellate court will look beyond the use, or the absence, of the word "variance," and determine whether an appellant is claiming that he was denied notice or that the evidence was insufficient to convict.

This holding would not require the overruling of any caselaw, in the sense that any of our previous variance cases were wrongly decided. Those cases which melded the sufficiency and notice analyses may very well have reached the same result under a strict sufficiency or notice analysis. But we should clarify the law now—sufficiency and notice are wholly different claims, to be resolved independently of one another. We should disavow the reasoning of our past cases that have combined the two.

## II.

The issue in this case is whether the evidence was sufficient, not whether Gollihar received notice of the allegations against him. Under *Malik*, sufficiency of the evidence is to be measured against the hypothetically correct jury charge. A hypothetically correct jury charge is one which "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." [9] This list is not

9. *Malik*, 953 S.W.2d at 240.

necessarily exhaustive.[10] In *Malik*, the trial court charged the jury concerning the legality of the defendant's detention.[11] We noted that this charge merely related to the admissibility of evidence, not to any "element of the offense."[12] We explained that a judgment of acquittal should be reserved for those instances in which there is an "actual failure in the State's proof of the crime."[13]

Sometimes the State alleges evidentiary matters in its indictment which need not be proved. These allegations, as the majority notes, are considered "surplusage." In *Burrell v. State*,[14] we explained that "allegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment are treated as mere surplusage, and may be entirely disregarded." The exception to that rule is when "the unnecessary matter is descriptive of that which is legally essential to charge a crime."[15] In *Upchurch v. State*,[16] we explained that extra language is "descriptive" of an element of the offense if it "define[s] the offense more narrowly, place[s] it in a specific setting, or describe[s] the method by which it was committed." Such language "must be proven as alleged, even though needlessly stated."[17] *Ortega v. State*[18] relied on this line of authority.

As the majority recognizes, the rule that language in an indictment that is descriptive of an element of the offense must be proved even though needlessly alleged conflicts with the rationale in *Malik*. Under *Malik*, a judgment of acquittal should be reserved for those instances in which there is an "actual failure in the State's proof of the crime."[19] The Court in *Burrell* recognized that excessive language "might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment."[20] This rationale applies regardless of whether the language is descriptive of an element of the offense.

This case presents the obvious problem. There was no actual failure in the State's proof of the crime. The State proved theft of a go-cart. Indeed, Gollihar admitted taking the go-cart. The only issue at trial was whether he had consent, and the jury resolved that issue against him. There was no doubt at trial that a go-cart was taken. The fact that the State unnecessarily alleged the serial number of the go-cart, and the proof at trial showed a different serial number, should not render the evidence insufficient to convict under *Malik*.

I agree with the majority that *Malik* implicitly overruled *Ortega* and *Burrell*. The serial number of the go-cart was surplusage: descriptive of an element of the offense, but needlessly alleged. It need not have been proved by the State. It should not be included in the hypothetically correct jury charge. The evidence was

---

10. *Id.* at 240 n. 5.

11. *Id.* at 235, 240.

12. *Id.* at 240.

13. *Ibid.*

14. 526 S.W.2d 799, 802 (Tex.Crim.App.1975).

15. *Ibid.*

16. 703 S.W.2d 638, 641 (Tex.Crim.App.1985).

17. *Id.* at 640, *citing Burrell*, 526 S.W.2d at 802.

18. 668 S.W.2d 701 (Tex.Crim.App.1983).

19. *Malik*, 953 S.W.2d at 240.

20. *Burrell*, 526 S.W.2d at 802.

sufficient to convict Gollihar under the hypothetically correct charge.

### III.

I concur in the judgment of the Court. In particular, I agree that *Malik* overruled *Ortega* and *Burrell* and that *Malik* applies even in the absence of alleged jury charge error. But I dissent to the majority's overruling all surplusage law and to the majority's analyzing this sufficiency claim in terms of whether Gollihar received notice. I join only Parts I and IV of the Court's opinion.