# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-12-00754-CR

---

**Kelly Ostrander, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY**
**NO. C-1-CR-11-501028, HONORABLE MIKE DENTON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found Kelly Ostrander guilty of assault causing bodily injury and found that he was in a dating relationship with the victim. The trial court assessed sentence at ten days in jail. Ostrander contends that the evidence was insufficient to prove that he used a "pellet gun" in the commission of the assault as alleged in the information and queried in the jury charge. We will affirm the judgment.

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Ostrander contends that the trial court's inclusion of the word "pellet" in the jury charge required proof that

he used a pellet gun. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). He argues that the record lacks proof of the type of gun that was used to injure the victim.

Ostrander and Emily Montgomery lived together as a couple in a third-floor apartment. Their testimony about the incident generally follows the same outline with some differences in detail not relevant to this appeal. The couple engaged in a "tickle fight" that escalated. She asked him to stop, but he continued and dug his thumbs into the inside of her elbow, which she did not like. She said she pushed him off, they argued, and eventually he threw her shoes off the balcony—he says because she was hitting him with the shoes. She retrieved her shoes and threw them at him. He says she kept coming at him and, eventually, he shot her with what she called a BB gun (though she responded when asked about a pellet gun) and he called an Airsoft gun. Ostrander testified that the projectiles from an Airsoft rifle sting and leave a welt. He shot her several times before she stopped attacking him. She exerted some amount of force against him to get to her bedroom (he says she strangled him). In the process, she slapped him and knocked his glasses off, which he said broke the glasses. He then left the apartment.

Austin Police Officer Derrick Ingram testified that he was not the first on the scene. He said that another officer told him that Montgomery's welts "came from a pellet gun and that's when I spoke to Ms. Montgomery and she described the pellet gun to me" as a "plastic shotgun." Ingram said he then entered the apartment "to see if I could find the pellet gun in question and I found it on the floor and I seized it for evidentiary purposes." He then identified the "pellet gun that [he] picked up at the scene" as well as "a canister of plastic pellets." He agreed that a canister of pellets in evidence resembled "the pellets that [he] seized." Ingram testified that he then "took the

pellets and the pellet gun back out to the ambulance where Ms. Montgomery was and asked her if that was the gun and the pellets and she answered yes to both."

We conclude that there is legally sufficient evidence to support the jury's finding that Ostrander shot Montgomery with a pellet gun that left welts, one of which resulted in a scar. The jury saw the gun and projectiles that APD seized from the apartment and that Montgomery identified at the scene as the weapon used against her. Ingram described the projectiles as "pellets" and the weapon as a "pellet gun." When Ostrander's counsel stated that when he was growing up a pellet gun fired metal pellets, and then counsel asked, "What are those made out of," Ingram said, "These are plastic." Montgomery responded to questions about the "pellet gun" used against her. When Ostrander was asked "how many times did you fire the pellet gun," he responded, "I don't recall exactly how many times." He did not deny that the gun he used was a pellet gun. The record contains legally sufficient evidence to support the implied finding that Ostrander used a pellet gun to injure Montgomery.

We affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   December 4, 2013

Do Not Publish

3