**AFFIRMED; Opinion Filed October 8, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01106-CR

**JONTEL UWANDU, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-17-75053-P**

# MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Lang

Appellant Jontel Uwandu was charged by indictment with aggravated assault of a public servant. Appellant waived a jury trial and entered an open plea of guilty. Following a bench trial, the trial court signed a "Judgment of Conviction" respecting the charged offense and assessed punishment at fifteen years' imprisonment.

In a single issue on appeal, appellant contends his guilty plea "was not substantiated" because "the evidence presented at his unitary trial materially varied from the allegation in the indictment." We decide appellant's issue against him. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL CONTEXT

The indictment in this case stated in part that on approximately January 9, 2017, appellant "intentionally, knowingly and recklessly cause[d] bodily injury" to the complainant, a Dallas

police officer, "by STRIKING AND FORCING COMPLAINANT TO AND AGAINST THE FLOOR AND BY CHOKING COMPLAINANT WITH A HAND, and said defendant did use and exhibit a deadly weapon, to-wit: THE FLOOR AND A HAND, during the commission of the assault." (emphasis original). In a written "Judicial Confession" signed by appellant and admitted into evidence at trial without objection, appellant (1) agreed and stipulated that the facts in the indictment described above "are true and correct and constitute the evidence in this case" and (2) judicially confessed that he "committed the offense with which I stand charged exactly as alleged in the indictment in this cause."

At trial, Detective Lawler of the Dallas Police Department testified that on the date in question, appellant had been arrested on charges related to sexual assault of a child and was "in custody at Lew Sterrett Jail." Lawler went to the jail to interview appellant about that offense. Lawler stated he and appellant sat down face to face at a table in a small interview room. No other persons were in the room. The door to the room was open and appellant was not hand-cuffed or shackled. Lawler placed an audio recorder on the table between them and informed appellant that the interview would be recorded. Also, Lawler had with him a folder that he "was using to take notes on."

Lawler testified he interviewed appellant for approximately one hour, during which time appellant "admitted to having sex with the victim." However, appellant then "realized that he might be in trouble over what happened" and began "contradicting himself." According to Lawler, "at that point, [appellant] looked down at the recorder and he kind of tensed up and kind of became a little more aggressive." Lawler stated that as he looked down at his folder to check his notes, appellant suddenly "punched me directly into the jaw with his right hand . . . and simultaneously reached for the recorder." Then, the two of them "began struggling over the recorder." Specifically, Lawler testified on direct examination as follows:

A. During the course of the struggle, I lost my balance and actually fell . . . . [Appellant] then got on top of me and he grabbed my tie with one of his hands while trying to get the recorder out of my other hand, because the recorder was in my hand at that point, and he began strangulating me with my own tie.

Q. Okay. Exactly what do you mean by strangulating you?

A. He basically grabbed the tie and wrapped it around his hand multiple times and began pulling up in a motion that was cutting off my airflow to my neck.

Q. Did he stop your airflow?

A. He did. I began to—I began to slowly lose consciousness and black out, as I would call it. And at that point, I realized I was in some serious trouble. Being I was in jail, I had no weapons on me whatsoever. I began to yell franticly for help and that's when Sgt. Widemon, I believe is his name, heard me and came to my aid.

Q. Got it. Were you in fear for your life?

A. Very much so.
. . . .
Q. . . . In your experience, is it common that you don't see marks or bruises from that type of offense?

A. Considering that he used my tie and not his actual hands, yes, ma'am, that is very common.

On cross-examination, Lawler testified in part as follows:

Q. So Mr. Widemon and others took care of [appellant] and subdued him?

A. Correct.

Q. Now, what's the reference to a deadly weapon, what's that all about?

A. Deadly weapon?

Q. Yeah. Are you familiar with the indictment in this case?

A. Aggravated assault on a public servant.

Q. And the details of that aggravated assault?

A. That he strangulated me with my own tie.

Q. Are you familiar with—was there a deadly weapon involved?

A. There was no deadly weapon involved.

Further, on redirect examination, Lawler was asked, "You will agree with me, Det. Lawler, that an individual can kill another person with their hands?" Lawler responded, "Very easily." Also, Lawler testified he believed he would have lost consciousness if Widemon had not come into the room.

Widemon, a special response team commander at the jail, testified in part (1) when he reached the interview room during the incident in question, "[appellant] was on top of [Lawler], he had his hand around Det. Lawler's tie and was choking him," and (2) "it's my opinion, that [appellant] was going to kill [Lawler]."

Appellant testified in part that he "didn't grab [Lawler's] tie at all," "did not try to strangle him at all," "wasn't choking him," and "wasn't trying to hurt him in any kind of way." Following the trial court's conviction of appellant and assessment of punishment described above, this appeal was timely filed.

## II. STANDARD OF REVIEW

Our appellate "sufficiency" review of non-capital felony guilty pleas to the court is confined to determining whether sufficient evidence supports the judgment of guilt under article 1.15 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005); *McGill v. State*, 200 S.W.3d 325, 330 (Tex. App.—Dallas 2006, no pet.); *Debusk v. State*, No. 05-16-00947-CR, 2017 WL 3275904, at *12 (Tex. App.—Dallas July 27, 2017, pet. ref'd) (mem. op., not designated for publication). Although the State must introduce evidence into the record establishing the defendant's guilt, there is no requirement that the supporting evidence prove the defendant's guilt beyond a reasonable doubt. *See* CODE CRIM. PROC. art. 1.15; *McGill*, 200 S.W.3d at 330. Rather, the supporting evidence must simply embrace each essential element

of the offense charged. *See Stone v. State*, 919 S.W.2d 424, 427 (Tex. Crim. App. 1996); *McGill*, 200 S.W.3d at 330.

A judicial confession or stipulation of evidence is sufficient to sustain a conviction based on a guilty plea and satisfies the requirements of article 1.15 as long as it embraces every essential element of the charged offense. *See Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009); *Debusk*, 2017 WL 3275904, at *12. "A trial court is not obliged to sua sponte withdraw a defendant's plea of guilt so long as the court fulfills its obligation to consider the evidence submitted even if evidence is adduced that reasonably and fairly raises an issue as to the defendant's guilt." *Debusk*, 2017 WL 3275904, at *12 (citing *Aldrich v. State*, 104 S.W.3d 890, 893 (Tex. Crim. App. 2003)); *accord Euan v. State*, No. 05-16-00252-CR, 2017 WL 1536514, at *8 (Tex. App.—Dallas Apr. 27, 2017, pet. ref'd) (mem. op., not designated for publication).

### III. APPLICABLE LAW

A person commits the offense of assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a) (West Supp. 2017). Under penal code section 22.02(a), a simple assault becomes aggravated if the assailant "uses or exhibits a deadly weapon during the commission of the assault." *See id.* § 22.02(a) (West 2011); *see also id.* § 22.02(b)(2) (aggravated assault is felony of first degree if committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty").

A "variance" occurs when "there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id*. Additionally, the Texas Court of Criminal Appeals has stated,

A variance between the wording of an indictment and the evidence presented at trial is fatal only if "it is material and prejudices [the defendant's] substantial rights." When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. In summary, we hold that when faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a "material" variance will render the evidence insufficient.

*Id.* at 257 (citations omitted); *accord Hernandez v. State*, No. PD-1049-16, 2017 WL 4675371, at *2 (Tex. Crim. App. Oct. 18, 2017).

## IV. APPLICATION OF LAW TO FACTS

In his sole issue on appeal, appellant contends his guilty plea "was not substantiated because the evidence presented at his unitary trial materially varied from the allegation in the indictment." According to appellant, (1) he "pleaded guilty and judicially confessed to aggravated assault against a public servant by using his hands and the floor as a deadly weapon," but "the complainant testified at [appellant's] unitary trial that [appellant] strangled him with a necktie"; (2) "[i]n a prosecution for aggravated assault with a deadly weapon, a variance as to the type of deadly weapon used or exhibited is material"; and (3) the evidence presented at his trial was "inconsistent with the offense charged" and "substantiated only that [appellant] was guilty of the lesser-included offense of assault of a public servant." In support of his arguments, appellant cites *Hernandez. See* 2017 WL 4675371.

The State argues the evidence "is sufficient to support [a]ppellant's guilty plea and the trial court's finding that [a]ppellant used a deadly weapon during the commission of the offense." Specifically, the State asserts (1) "[a]ppellant's guilty plea and judicial confession are sufficient to establish each element of the charged aggravated assault of a public servant offense" and (2) "[e]vidence that [a]ppellant rolled his hand around Detective Lawler's tie to strangle Lawler

does not constitute a material variance between the deadly weapon allegation in the indictment (a hand) and proof at trial."

In *Hernandez*, defendant Teodoro Miguel Hernandez pleaded not guilty to aggravated assault with a deadly weapon. The indictment in that case alleged that Hernandez "cause[d] bodily injury to [the complainant] by striking [her] head or body with [his] hands, and [he] did then and there use or exhibit a deadly weapon, to-wit: water, during the commission of said assault." *Id*. at *1. At trial, the testimony showed Hernandez struck the complainant repeatedly with his hand, left the room, then returned to the room with water and, at that point, used one hand to choke the complainant while simultaneously using the other to pour water down her throat. *Id*. at *4. After Hernandez was convicted by a jury and sentenced, the court of appeals reversed the trial court's judgment, concluding that because the evidence failed to show Hernandez used the water as a deadly weapon at the same time that he was striking the complainant with his hands, there was insufficient evidence to support the deadly weapon element of aggravated assault. *Id*. at *2. The court of appeals reformed the judgment to reflect a conviction for the lesser-included offense of simple assault and remanded the case to the trial court for a new punishment hearing. *Id*.

However, the court of criminal appeals reversed the court of appeals and reinstated the trial court's judgment. *Id*. at *1. The court of criminal appeals stated in part that the variance regarding Hernandez's use of his hands (1) "would be one describing only the manner and means by which the bodily injury was caused" and (2) pertained to a "non-statutory allegation that describes the offense in some way." *Id*. at *4. According to the court of criminal appeals, "[s]uch variance is material only when it converts the offense proven at trial into a different offense than what was pled in the charging instrument, which could potentially subject a defendant to another prosecution for the same offense." *Id*. Further, the court of criminal appeals stated,

> [T[he fact that [Hernandez] caused [the complainant] to suffer bodily injury with his hands, *not* by striking her with them, but instead by choking her, does not make

the aggravated assault that was proved at trial different than the aggravated assault that was pled in the indictment. What was pled and proved was that [Hernandez] committed aggravated assault against [the complainant] by causing her bodily injury and that he used water as a deadly weapon while doing so.

*Id.* (emphasis original).

In the case before us, appellant does not explain or describe how *Hernandez* supports his position. Further, unlike *Hernandez*, the case before us involves a plea of guilty and a judicial confession admitted into evidence without objection in which appellant (1) agreed and stipulated that the facts in the indictment described above "are true and correct and constitute the evidence in this case" and (2) judicially confessed that he "committed the offense with which I stand charged exactly as alleged in the indictment in this cause." Appellant's judicial confession embraces every element of the charged offense and therefore is sufficient to sustain a conviction based on his guilty plea. *See Menefee*, 287 S.W.3d at 13; *Debusk*, 2017 WL 3275904, at \*12; *see also Keller v. State*, 125 S.W.3d 600, 605–06 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (judicial confession containing indictment paragraph and defendant's statement that "I understand the above allegations and I confess that they are true" was sufficient to sustain conviction for charged offense that included deadly weapon allegation).

Additionally, as described above, appellant's complaint pertains to an alleged material variance between the charged deadly weapon, i.e., the floor and a hand, and the evidence presented at trial. However, the evidence at trial included testimony that appellant "wrapped [Lawler's tie] around his hand multiple times and began pulling up in a motion that was cutting off [Lawler's] airflow" and "had his hand around Det. Lawler's tie and was choking him." Thus, the record shows the evidence at trial described appellant's use of a deadly weapon identical to that which the indictment alleged was used by him while choking Lawler, i.e., a hand. On this record, we conclude there is no material variance between the proof at trial and the allegations in the indictment. *See Gollihar*, 46 S.W.3d at 246, 257.

We decide appellant's issue against him.

## V. CONCLUSION

We decide against appellant on his sole issue. The trial court's judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
171106F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JONTEL UWANDU, Appellant

No. 05-17-01106-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-17-75053-P.
Opinion delivered by Justice Lang, Justices Fillmore and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 8th day of October, 2018.